741 P.2d 693

**Curtis PERRY, Petitioner Employee,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Phoenix Suns Professional Basketball Club, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. 1 CA–IC 3600.**

Court of Appeals of Arizona, Division 1, Department C.

June 9, 1987.

Ordered Published as Opinion July 16, 1987.

Review Denied Sept. 22, 1987.

Barry Fish, Stephen M. Bressler, Lewis and Roca, Phoenix, for petitioner employee.

Dennis P. Kavanaugh, Chief Counsel, The Industrial Com'n, Phoenix, for respondent.

Robert K. Park, Chief Counsel by Christopher E. Kamper, State Compensation Fund, Phoenix, for respondent employer and respondent carrier.

SHELLEY, Presiding Judge.

This is a special action review of an Industrial Commission award denying reopening of a 1977 claim on the basis of preclusion. We agree that preclusion applies and therefore affirm the award.

Curtis Perry, the petitioner employee (claimant) is a former professional basketball player. In approximately January 1977, while playing for the Phoenix Suns (Suns), the respondent employer, claimant developed severe low back pain and was unable to complete the remainder of the season. He was then twenty-nine years old and had never had back problems before.

Compensability was accepted. The Suns' team physician, Paul M. Steingard, D.O., diagnosed a lumbosacral strain with possible nerve root irritation. Dr. Steingard consulted two orthopedic surgeons, Paul James Nichols, M.D. and William C. Brainard, M.D. The claimant also saw orthopedic surgeon Thomas Henry Tabor, Jr., M.D., who supervised active treatment.

In February 1977, Dr. Nichols noted muscle spasm, a scoliotic tilt, muscle atrophy of the right thigh, and absent right patellar reflex. X-rays confirmed a first degree spondylolisthesis at L3–L4, bilateral breaks in the pars interarticularis at L3, and disc degeneration and narrowing between L3 and L4. Dr. Nichols subsequently reported that the spondylolisthesis, rather than a herniated disc, accounted for the claimant's symptoms, but he did not specify the cause of the spondylolisthesis itself. Dr. Brainard, however, reported on February 24th that the pars defects "appear non-sclerotic, and I would be concerned about this being an acute injury, *i.e. a stress fracture through the pars interarticularis with the particular activities mentioned.* The patient may have had a unilateral defect without slip, and may have had the long-standing degenerative disc process without symptomotology, *and then developed stress fracture in the area with his activities, producing the symptomotology and further strain on the disc space itself."* Dr. Brainard also recommended a bone scan, which revealed an abnormal area of increased uptake at L3. A follow-up bone scan approximately one year later was negative.

The claimant's symptoms improved and he attempted to resume his career the following season. The pain returned, and he was again disabled in January 1978. He failed to pass the fall 1978 team physical and never played professional basketball again.

In October 1978, Dr. Tabor reported that the claimant was again asymptomatic and had been discharged without a permanent impairment. Relying on Dr. Tabor's opinion, the respondent carrier (Carrier) closed the claim. The claimant protested the termination notice. A hearing was then conducted.

The claimant called only one medical witness, Dr. Steingard. Referring to Dr. Brainard's report and to the bone scans, he acknowledged "there's a question medically as to whether or not spondylolisthesis and the pars defect is a congenital thing, and then the flareup [of symptoms] is due to an acute injury ..., or whether or not it is, in fact, a stress fracture, a fresh new injury...." But in his opinion, the spondylolisthesis most likely was preexistent and there was no way of knowing the etiology of the pars defect. He considered these questions "academic" because "[t]here's no question that the accident caused the symptoms...." He also testified that this symptomatic aggravation permanently disabled the claimant from playing professional basketball.

Dr. Tabor testified that the industrial injury was a temporary soft tissue sprain in the area of the bony defects. The defects themselves were developmental abnormalities. To support this opinion, Dr. Tabor relied on the x-rays taken immediately after the industrial injury, which indicated long-standing changes, and x-rays taken when the claim was closed, which showed no degeneration since the industrial injury. He testified that these were findings inconsistent with a traumatic etiology. Dr. Tabor did rate a 5% permanent impairment for the underlying condition, but this rating was unrelated to the industrial injury. He also testified that the

prognosis was unpredictable—the claimant might remain asymptomatic or might have significant difficulty in the future.

On May 24, 1979, the administrative law judge issued the award terminating the claim without permanent impairment. He found that the structural defects were developmental, that the industrial injury had only temporarily aggravated the underlying condition, and that this condition rated a 5% impairment unrelated to the 1977 injury. The claimant did not seek review and the award accordingly became final. *E.g., Sandoval v. Salt River Project,* 117 Ariz. 209, 571 P.2d 706 (App.1977).

In February 1985, the claimant returned to Dr. Nichols, complaining of increased pain. X-rays revealed a significant collapse of the L3–L4 disc space. Dr. Nichols attributed this degeneration to the industrial injury.

Relying on this opinion, the claimant petitioned to reopen the 1977 injury claim. The Carrier denied the petition. The claimant timely protested the denial. Pending the scheduled hearings, Drs. Brainard and Tabor reexamined the claimant.

At these hearings, the claimant called both Dr. Nichols and Dr. Brainard. Dr. Nichols confirmed the additional degeneration of the disc space. He conceded that the spondylolisthesis caused this degeneration and therefore that the 1977 injury caused the degeneration only if it also caused the spondylolisthesis. In his opinion, this causal link was established because a stress fracture had caused the spondylolisthesis. He testified that the degeneration between 1977 and 1985, the two bone scans, and the claimant's history substantiated this etiology.

Dr. Brainard concurred with Dr. Nichols for the same reasons. He, however, admitted that he had diagnosed the stress fracture in 1977. He also acknowledged that the stress fracture caused the spondylolisthesis and that this condition in turn was responsible for the degenerative narrowing.

Dr. Tabor's opinion was unchanged. Although he had independently confirmed the markedly narrowed disc space, in his opinion this degeneration was an expected consequence of the nonindustrially related spondylolisthesis. He also disagreed that the bone scans were diagnostic of a stress fracture; to the contrary, he interpreted them to be consistent with his diagnosis.

The administrative law judge then issued the award denying reopening. He found that although the claimant's condition had worsened since closing, the cause of this worsening was the underlying spondylolisthesis. He also found that Drs. Nichols and Brainard's opinions were "nothing more nor less than new evidence/opinions on matters which were previously known/considered/litigated and/or which could have been litigated at the ... prior 'closing' proceedings in 1979...." He accordingly concluded that the prior adjudication that the spondylolisthesis was unrelated to the industrial injury was final and precluded reopening. This denial was affirmed on administrative review. The current special action followed.

On review, the claimant concedes that the medical evidence conflicted, but he argues that the administrative law judge erroneously failed to resolve the merits of this conflict. The premise underlying this argument is that preclusion is inapplicable because the claimant has previously undiscovered and additional conditions.

■ Reopening is permitted for new, additional, or previously undiscovered conditions related to the industrial injury. *See* A.R.S. § 23–1061(H). This provision for reopening strikes a balance between finality and the remedial purpose of workers' compensation. *See Stainless Specialty Manufacturing Co. v. Industrial Commission,* 144 Ariz. 12, 15–16, 695 P.2d 261, 264–65 (1985). On one hand, finality principles preclude relitigation of issues that were or that could have been determined when the claim was closed.[1] *See id.* at 15,

1. This statement applies to claim preclusion. Issue preclusion, in contrast, precludes relitigation only of matters that were actually litigated and determined and only if that determination was essential. *See, e.g., Red Bluff Mines, Inc. v. Industrial Commission,* 144 Ariz. 199, 696

695 P.2d at 264. On the other hand, the remedial purpose requires continuing Industrial Commission jurisdiction to adjust to changed circumstances. *See id.* at 16, 695 P.2d at 265. The balance is struck by applying preclusion to conditions that were "existing and known" when the claim was closed and permitting reopening for conditions that are new, additional, or previously undiscovered. *See id.*

■ The test for new and additional conditions is purely comparative. The medical evidence must establish that an industrially related condition developed or worsened after the claim was closed. *E.g., Bishop v. Industrial Commission,* 94 Ariz. 65, 381 P.2d 598 (1963); *accord* 3 A. Larson, *The Law of Workman's Compensation* § 81.33 (1983). Preclusion therefore applies even "if new evidence is found to controvert that produced at the hearing or if a doctor changes his mind...." *Stainless,* 144 Ariz. at 19, 695 P.2d at 268.

■ This same test does not apply to previously undiscovered conditions. In this context, new evidence may support reopening: "Of course, if the change in testimony involves a 'previously undiscovered' condition, A.R.S. § 23–1061(H) would be applicable." *Id.* at 19 n. 3, 695 P.2d at 268, n. 3.

The first case in this line of authority is *Garrote v. Industrial Commission,* 121 Ariz. 223, 589 P.2d 466 (App.1978) (Wren, J. dissenting). The claimant in *Garrote* injured his back at work and underwent a laminectomy. The treating physician subsequently discharged him without impairment, and the claimant did not protest the termination notice. He subsequently reinjured his back, and relying on new medical opinion that the original injury had actually resulted in a permanent impairment, he petitioned to reopen. This court rejected the argument that a changed condition is necessary and concluded that the medical evidence established a previously undiscovered "disability." *Id.* at 224–25, 589 P.2d at 467–68. *See also Payne v. Industrial Commission,* 136 Ariz. 105, 664 P.2d 649

P.2d 1348 (App.1984). One recent rearrangement case appears to apply issue preclusion rather than claim preclusion. *See Gallegos v.*

(1983) (adopting this analysis without citing *Garrote* ).

The next case is *Crocker v. Industrial Commission,* 124 Ariz. 566, 606 P.2d 417 (1980). The claimant in *Crocker* suffered multiple injuries in an auto accident. He had persistent foot pain, but his treating physician was unable to diagnose its cause. Although he protested the termination of his claim, it was closed without permanent impairment. Several years later, another physician diagnosed an organic cause for the pain. The supreme court concluded that this new diagnosis constituted a previously undiscovered condition:

While symptoms of the injury persisted, a finding of a previously undiscovered condition is not foreclosed. Pain is a symptom of an underlying physical condition and, although claimant's physicians were aware that he was suffering pain at the time his file was closed, none diagnosed the underlying condition which caused his pain. This case falls squarely within the provision of the statute providing for reopening upon proof of a previously undiscovered condition.

*Id.* at 568, 606 P.2d at 419.

This court then extended *Crocker* in two controversial cases. In the first, a claimant who had injured his back petitioned to reopen. At the hearing, although one group of physicians interpreted a myelogram to show a herniated disc, another group interpreted it to show a bony defect. The conflict was resolved against the claimant. The claimant then saw another physician, who interpreted the same myelogram and recommended surgery. The claimant consented, and the surgeon reported finding a herniated disc. The claimant filed a second petition to reopen. This court set aside an award denying reopening:

We cannot logically distinguish the facts in this case from the facts in *Garrote* and *Crocker.* In all three cases, the true cause of the worker's physical problems was not definitely known at the time of the prior award finding no permanent

*Industrial Commission,* 144 Ariz. 1, 695 P.2d 250 (1985).

disability. In all three cases, later medical diagnosis was able to determine the true cause of the physical disability. *Pascucci v. Industrial Commission*, 126 Ariz. 442, 445, 616 P.2d 902, 905 (App.1980) (Jacobson, J. dissenting).

The second case involved a police officer who suffered a gunshot wound to the head. After surgery he was able to return to light work, but he developed blackouts and psychiatric symptoms. After a period of psychotherapy, these conditions were considered stationary and the claim was closed without permanent impairment. The claimant's symptoms recurred. His treating neurosurgeon did not then consider the industrial injury to be a likely cause of these symptoms but nevertheless recommended further diagnostic study. Other consulting physicians, including a psychiatrist, speculated about a causal connection. The claimant petitioned to reopen but did not protest the denial of this petition. Approximately two years later, the treating neurosurgeon concluded that the industrial injury was the cause of some of the symptoms. In addition, a consulting neurologist for the first time definitively diagnosed a psychomotor seizure disorder. The claimant again petitioned to reopen. This court set aside an award denying reopening:

> In the case before us the petitioner, like the petitioner in *Crocker*, had experienced problems shortly after the industrial accident, but it was not until the second petition to reopen ... that doctors were able to give a definite medical diagnosis of his problems and relate his problems directly to the industrial accident. Unlike *Aetna [Insurance Co. v. Industrial Commission*, 115 Ariz. 110, 563 P.2d 909 (App.1977)] and the line of cases relied upon by the carrier, this case did not involve a changed opinion but rather an evolution of opinion from a tentative to a definite form. As ... [the treating neurosurgeon's] testimony emphasizes, it takes time to observe a patient with a brain injury to intelligently determine if his problems relate to his pre-injury personality or are caused by the industrial accident.

*Bell v. Industrial Commission*, 126 Ariz. 536, 539, 617 P.2d 44, 47 (App.1980) (Jacobson, J. dissenting).

The supreme court then decided *Salt River Project v. Industrial Commission*, 128 Ariz. 541, 627 P.2d 692 (1981). In this case, although there was some evidence of disc disease when the claim was closed, diagnostic tests led the experts to attribute the claimant's complaints of pain to a lumbar sacral strain and personality problems. After closing, surgery confirmed that a herniated disc caused the pain. *Id.* at 544, 627 P.2d at 695. The supreme court concluded that "[w]here the true cause of the worker's physical or mental disability was not definitely known at the time of the prior award finding no permanent disability, the discovery of the true cause is grounds for a reopening under the 'previously undiscovered' clause of A.R.S. § 23–1061(H)." *Id.*

This line of authority unquestionably changed the law. Previously undiscovered conditions formerly included physical and mental conditions that were existent but not yet manifest. A new diagnosis for a manifest condition was insufficient to reopen. *See, e.g., Black v. Industrial Commission*, 89 Ariz. 273, 361 P.2d 402 (1961); *Standard Brands Paint Co. v. Industrial Commission*, 26 Ariz.App. 365, 548 P.2d 1177 (1976) ("testimony, which was supported by the discogram, was no more than additional evidence of a diagnosis of the ... physical condition which had been presented at the original hearing.")

None of the recent cases, however, acknowledges this reinterpretation. *Cf. Stainless Specialty Manufacturing Co. v. Industrial Commission*, 144 Ariz. at 16–19, 695 P.2d at 265–68 (candidly reinterpreting the term "new condition" to include newly recommended medical treatment for an unchanged condition.) Instead of striking a principled balance between finality and reopening, the cases appear to merely rationalize a result with the label "previously undiscovered condition." Yet without new principles, the reinterpretation potentially abrogates finality. *See County of*

*Maricopa v. Industrial Commission*, 134 Ariz. 159, 654 P.2d 307 (App.1982).

The current petition to reopen is a case in point. If Drs. Nichols' and Brainard's diagnosis is accepted, the "true cause" of the spondylolisthesis and additional degeneration is a stress fracture. But finality restricts the right to have the trier-of-fact consider the evidence. It is circular to argue that the trier-of-fact must consider evidence because the evidence establishes a previously undiscovered condition if he accepts it.

■ Furthermore, the current claim to reopen is factually distinguishable. Unlike *Garrote, Crocker,* and *Salt River Project,* evidence of a stress fracture was available when the claim was closed in 1978. Dr. Brainard had made the diagnosis and three of the diagnostic factors (the claimant's history, the post-injury x-ray, and the two bone scans) were of record. Unlike *Pascucci* and *Salt River Project,* the new evidence of additional degeneration is inconclusive; it merely generates the same conflict concerning etiology. Unlike *Bell,* the medical opinion did not evolve from tentative to definite. Dr. Brainard confirmed that he made his diagnosis in 1977.

We therefore conclude that the administrative law judge properly applied preclusion. Because the claimant could have litigated the cause of the spondylolisthesis when the claim was closed, the determination that it is a developmental abnormality is final. Furthermore, because the spondylolisthesis caused the additional degeneration, the final determination of causation applies to it as well. *See e.g., Govan v. Industrial Commission,* 23 Ariz.App. 261, 532 P.2d 533 (1975) (claimant attempted to reopen for worsened psychological condition, but prior determination that the condition was not causally related to the industrial accident precluded relitigation of the causal connection); *Waller v. Industrial Commission,* 6 Ariz.App. 249, 431 P.2d 689 (1967) (claimant attempted to reopen for new conditions related to surgery, but prior determination that the surgery was not causally related to the industrial injury pre-

cluded relitigation of the causal connection).

We accordingly affirm the award.

CORCORAN and CONTRERAS, JJ., concur.