NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

FRY'S FOOD STORES OF AZ, INC.,
*Petitioner Employer*,

SEDGWICK CMS,
*Petitioner Insurance Carrier*,

*v.*

THE INDUSTRIAL COMMISSION
OF ARIZONA,
*Respondent*,

DEBBIE VALENCIA,
*Respondent Employee*.

No. 1 CA-IC 18-0003
FILED 12-6-2018

Special Action - Industrial Commission
ICA No. 20153-090295
INSCA No. 30154774831-0001
The Honorable Deborah Nye, Administrative Law Judge, *Retired*
The Honorable Gaetano J. Testini, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Lundmark, Barberich, LaMont & Slavin, PC, Phoenix
By Lisa M. LaMont, Danielle Vukonich
*Counsel for Petitioners Employer/Carrier*

Industrial Commission of Arizona, Phoenix
By Stacey Ann Rogan
*Counsel for Respondent ICA*

---

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge Randall M. Howe joined.

---

**J O H N S E N**, Judge:

**¶1**　　　　Fry's Food Stores of Arizona, Inc. and its insurance carrier seek special action review of the decision of the Industrial Commission of Arizona ("ICA") granting Debbie Valencia's petition to reopen her claim. For the following reasons, we affirm.[1]

## FACTS AND PROCEDURAL BACKGROUND

**¶2**　　　　Valencia worked in the deli at a Fry's store. On October 22, 2015, Valencia slipped on some grease on the floor and fell, landing on her left knee. A few days later, she went to an urgent care facility, complaining of pain in her left leg and knee. The urgent care center noted Valencia had joint tenderness, diagnosed her injury as a left knee strain, prescribed ibuprofen and recommended work restrictions. She filed a worker's compensation claim, which Fry's accepted.

**¶3**　　　　Valencia continued treatment at urgent care, which allowed her to return to work without restriction on November 24, 2015. On January 6, 2016, a nurse practitioner at the urgent care facility performed a McMurray's test, which was negative, and noted Valencia did not have

---

[1]　　　Valencia did not file an answering brief, but we decline to treat her failure as a confession of error. *See Nydam v. Crawford*, 181 Ariz. 101, 101 (App. 1994) (citation omitted).

any pain or reduced range of movement.[2]  Fry's closed Valencia's claim on January 6, 2016.  At no point during any of her visits to the urgent care facility was an MRI performed.

**¶4**          Valencia returned to urgent care on June 27, 2016, complaining of increasing pain in her left knee.  An examination revealed increased pain, reduced range of motion and a positive McMurray's test. Valencia then petitioned to reopen her worker's compensation claim.  Fry's denied the petition.

**¶5**          Before the resulting hearing, Dr. Anthony Theiler, an orthopedic surgeon, evaluated Valencia at the request of Fry's and its carrier.  Theiler reviewed Valencia's work-injury history and prior medical treatment and performed a physical examination, including a McMurray's test, which was negative.  Theiler did not order an MRI.  He concluded that Valencia likely suffered from a "degenerative medial meniscal tear with medial compartment arthrosis" that was "unrelated to the industrial injury in question and w[as] not aggravated by the industrial injury in question."

**¶6**          Meanwhile, Valencia consulted with Dr. Paul Pflueger, a certified orthopedic surgeon.  Pflueger ordered an MRI, which revealed a tear in her medial meniscus.  Pflueger's February 2, 2017 notes stated that he personally reviewed the MRI and the tear was "consistent with a trumatic [sic] injury" and was "totally consistent with [Valencia's] reported work injury."  Valencia submitted Pflueger's notes to the Administrative Law Judge ("ALJ"), although she did not subpoena him to testify.

**¶7**          ALJ Deborah Nye presided over the hearing.  Examined about the urgent care facility's notes from January 2016, which stated that she no longer felt pain and the injury was resolved, Valencia denied that she had made those comments. She testified she had said only that her knee "was getting better." Valencia added that she did not protest the closure of her claim only because the urgent care facility told her that she could "always reopen [it] at any time."  Valencia also testified she had suffered no

---

[2]          A McMurray's test is performed by manipulating a patient's knee so as to rotate the tibia on the femur; an audible click indicates "injury to meniscal structures." *See* "McMurray's sign," Mosby's Dictionary of Medicine, Nursing & Health Professions 1151 (8th ed. 2009); *McMurrays Test*, Physiopedia, https://www.physio-pedia.com/McMurrays_Test (last visited Oct. 26, 2018).

intervening injury between the closing of her claim and her June 27, 2016 return to urgent care.

**¶8**        Theiler testified that, as he stated in his report, the pain Valencia was experiencing was not related to the incident at Fry's. When the carrier's counsel described the MRI results to him, Theiler testified they were consistent with degeneration rather than an acute event.

**¶9**        The ALJ granted Valencia's petition to reopen her claim, finding that the positive McMurray's test in June 2016, contrasted with the negative result of several months before, constituted comparative evidence showing a physical change in her condition. The ALJ found Valencia was credible when she testified that there was no intervening event that might have caused the meniscus tear and that she was still feeling pain when her claim was closed and during the period before June 2016. The ALJ found that the "MRI demonstrate[d] a new condition, not previously diagnosed," and adopted as "more probably correct" Pflueger's opinion that the meniscus tear was caused by Valencia's slip in the Fry's deli.

**¶10**        Fry's sought review, arguing that Valencia had failed to offer comparative evidence to support her petition to reopen and that Theiler's testimony was more probably correct. Shortly thereafter, ALJ Nye retired and the case transferred to another ALJ, Gaetano Testini.

**¶11**        Valencia, Pflueger and Theiler testified at a second hearing. Valencia testified as before. Pflueger testified Valencia "had a cartilage tear that was almost certainly due to trauma" and that "the only trauma she told me about is the injury at work." Moreover, Pflueger stated that Valencia had had symptoms of the tear since the first injury but the tear was undiscovered until the MRI was performed. Theiler stated that his opinion remained unchanged, testifying that the tear was "a degenerative-type of tear," unrelated to Valencia's work injury. Additionally, Theiler testified there was no indication that Valencia's fall at Fry's caused the tear.

**¶12**        The ALJ affirmed the prior decision. Fry's timely sought review in this court. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(2) (2018), 23-951(A) (2018) and Rule 10 of the Arizona Rules of Procedure for Special Actions.[3]

---

3        Absent material revision after the relevant date, we cite the current version of a statute or rule.

**DISCUSSION**

**¶13**        Our review of an ICA award is "limited to determining whether or not the [ICA] acted without or in excess of its power and . . . whether . . . [its] findings of fact support the award, order or decision." A.R.S. § 23-951(B) (2018). "[W]e defer to the ALJ's factual findings but review questions of law *de novo*." *Landon v. Indus. Comm'n*, 240 Ariz. 21, 24, ¶ 9 (App. 2016). We view the evidence in the light most favorable to upholding the award. *Aguayo v. Indus. Comm'n*, 235 Ariz. 413, 414, ¶ 2 (App. 2014).

**¶14**        A claimant may petition to reopen a claim "upon the basis of a new, additional or previously undiscovered temporary or permanent condition." A.R.S. § 23-1061(H) (2018); *see Stainless Specialty Mfg. Co. v. Indus. Comm'n*, 144 Ariz. 12, 16 (1985). The claimant must prove by a preponderance of the evidence both the existence of "any one of the three conditions" and "a causal relation between that condition and the previous industrial injury." *Crocker v. Indus. Comm'n*, 124 Ariz. 566, 568 (1980). Although the claimant must use comparative evidence to prove a new or additional condition, that requirement does not apply to previously undiscovered conditions. *See id.* at 568; *Perry v. Indus. Comm'n*, 154 Ariz. 226, 229 (App. 1987). Instead, "[w]hen a disability in existence at the time of the previous award has not been discovered at the time of the award the claimant is entitled to a reopening upon discovery by the very terms of A.R.S. § 23-1061(H)." *Crocker*, 124 Ariz. at 569 ("although claimant's physicians were aware that he was suffering pain at the time his file was closed, none diagnosed the underlying condition which caused his pain").

**¶15**        As for the statutory requirements to reopen a claim under § 23-1061(H), Fry's and the carrier argue only that Valencia failed to sustain her burden because she did not provide comparative evidence to support a new or additional injury. As noted above, however, the ALJ found that the contrasting McMurray's test results constituted comparative evidence of a new injury. A McMurray's test performed on January 6, 2016, the date Valencia's claim was closed, was negative, while the same test performed on June 26, 2016, was positive. The ALJ also found the tear was "not previously diagnosed," a ground for reopening that would not require comparative evidence. *See Crocker*, 124 Ariz. at 568; *Perry*, 154 Ariz. at 229. The evidence also supported this finding: Although Valencia had pain even after her claim was closed in January 2016, a possible meniscus tear was not mentioned in any of the medical records until June 2016, and the January 2017 MRI finally revealed the tear definitively. As in *Crocker*, the evidence supported a finding that the pain Valencia experienced after her claim was

closed was "a symptom of an underlying physical condition" that had yet to be diagnosed. 124 Ariz. at 567-68.

¶16      Fry's and its carrier also argue the ALJs exceeded their authority in accepting Pflueger's opinion on causation over Theiler's. ALJ Nye considered the respective physicians' opinions and found Pflueger's opinion "more probably correct." After both experts testified at the second hearing, ALJ Testini found that the evidence supported ALJ Nye's determination. We agree the evidence supports the ALJs' findings of fact and will not reweigh the evidence. *See Carousel Snack Bar v. Indus. Comm'n*, 156 Ariz. 43, 46 (1988) (ALJ resolves conflicting medical expert testimony); *Kaibab Indus. v. Indus. Comm'n*, 196 Ariz. 601, 609, ¶ 25 (App. 2000).

## CONCLUSION

¶17      For the foregoing reasons, we affirm the award.



AMY M. WOOD • Clerk of the Court
FILED: AA