518 P.2d 592

Walter M. RINGGOLD, Petitioner,

v.

T,he INDUSTRIAL COMMISSION of Arizona, Respondent,

Cementation Company of America, Inc., Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. I CA–IC 878.

Court of Appeals of Arizona, Division 1, Department A.

Feb. 5, 1974.

Rehearing Denied March 13, 1974.

Review Granted April 9, 1974.

Lawrence Ollason, Tucson, for petitioner.

William C. Wahl, Jr., Chief Counsel, The Industrial Commission of Ariz., Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund, Phoenix, by George B. Morse, Tucson, for respondent employer and respondent carrier.

## OPINION

STEVENS, Judge.

There were three hearings and three hearing officer's awards prior to the 7 September 1972 Industrial Commission award.

The main issue before this Court is the propriety of the hearing officer's third award in the light of the first two awards and the evidence presented at the third hearing. We outline the dates as follows:

| Hearings held on: | Hearing Officers' Findings and Award dated: |
|---|---|
| 21 January 1971 | 29 January 1971 |
| 4 October 1971 | 8 October 1971 |
| 2 July 1972 | 31 July 1972 |

The Industrial Commission award of 7 September 1972 affirmed the 31 July 1972 findings and award of the hearing officer. The hearings will be referred to as the first, the second and the third hearings. The findings and awards of the hearing officers will be referred to as the first, the second and the third award.

Walter M. Ringgold, the petitioner, received an electric shock on 10 April 1970 in the course of his employment with the respondent employer. His attending physician, Coy L. Purcell, D. O., rendered a report to the Commission on 1 July 1970 wherein he referred to the fact that the petitioner had been treated by "Dr. Datillo, D. O." [Philip Datillo, D. O.]. Dr. Purcell's report concludes as follows:

"Remarks: Dr. Datillo's final diagnosis; Paroxysmal superventricular tachycardia due to unknown cause; pre diabetic glucose tolerance curve"

The Commission wrote to the petitioner who thereafter filed his own report of injury. This was promptly followed by the carrier's notice of claim status which denied the claim because of "insufficient evidence to establish a compensable claim within the meaning of the Workmen's Compensation Law of Arizona." The petitioner employed present counsel and there was a request for a hearing.

At the first hearing, in addition to lay witnesses, there was testimony by Dr. Purcell and by Clyle L. Saylor, M.D. Dr. Saylor was a resident physician at the San Manuel Hospital. He had not examined the petitioner and he identified a medical report written by Martin H. Meyer, M.D., which was addressed to Dr. Saylor in care of the hospital. This report was received in evidence without objection as was a post electric shock report from Dr. Datillo. This last report referred to a 1965 report by "Dr. Martin Myer" [sic]. Both of these reports were introduced by the carrier. The fact that Dr. Meyer had examined the petitioner as early as 1965 was thus clearly known to the carrier.

Dr. Purcell expressed the opinion that the petitioner was permanently disabled and unable to work.

The hearing officer rendered his first award which we quote in part:

"4. That the preponderance of the medical evidence establishes that the applicant had a pre-existing condition which caused him to experience eposidic [sic] paroxysmal superventricular tachycardia with blurring of vision; that the industrial injury of April 10, 1970 exacerbated the aforesaid underlying condition to such a degree that the applicant loses consciousness upon exertion and has even 'lacked out' while at rest.

"5. That the applicant on April 10, 1970 did sustain a personal injury by accident, arising out of and in the course and scope of his employment.

"6. That the applicant is entitled to medical, surgical and hospital benefits, as provided by law, from April 10, 1970 until his medical condition as a result of the industrial injury becomes stationary.

"7. That the applicant is entitled to temporary total and/or temporary partial disability compensation, as provided by law, from April 10, 1970 until his condition resulting from the industrial injury becomes medically stationary."

Implicit in this award is the finding of the necessary causal relationship between the petitioner's then condition and the 10 April 1970 industrial accident, even though not the sole or primary cause. The first award became final.

On 25 May 1971 the carrier issued a notice of claim status terminating medical benefits urging "claimant discharged with no residual permanent disability." There was a timely request for a hearing and the second hearing was held. Dr. Meyer was the only witness.

Dr. Meyer testified as to a series of examinations of the petitioner beginning on 15 March 1965. On 5 November 1965, during one of his examinations of the petitioner, Dr. Meyer, for the first time, was able to observe and test the petitioner's rapid heart beat. Dr. Meyer's clinical impression was that the petitioner "had a paroxysmal arterial tachycardia secondary to an arteriosclerotic heart disease." There were further examinations in late 1969, as well as examinations between the date of the electric shock and the second hearing.

At the hearing Dr. Meyer further testified:

"A I think that from 1965 and currently Mr. Ringgold has an arteriosclerotic condition with an active angina and an arteriosclerotic heart disease.

"Q You consider that his condition is now stationary?

"A Would you repeat that?

"Q Is his condition the same as it was in 1969, for instance?

"A I would state that from Mr. Ringgold's symptoms he would appear to be a bit worse than in 1969; from his symptoms objectively he seems the same physically I would say.

"Q Now, you say that he appears to be a bit worse. He is a few years older.

"A Yes he is.

"Q You consider that a natural progression of the arteriosclerotic condition?

"A That is a good probability.

"Q Good reasonable medical probability?

"A Reasonable medical probability."

Dr. Meyer testified that the petitioner should avoid strenuous activity with slight restrictions on ordinary physical activity. Apparently anxiety also brought on the petitioner's symptoms.

We quote from the second award:

"2. That the medical evidence fails to establish that the applicant's medical condition as a result of the industrial injury of April 10, 1970 has become stationary.

"3. That the applicant's medical condition resulting from the industrial injury of April 10, 1970 is not yet stationary.

"4. That the applicant is entitled to temporary total and/or temporary partial disability compensation benefits, as provided by law, from and after April 10, 1970.

"5. That the applicant is entitled to medical, surgical and hospital benefits, as provided by law, from and after April 10, 1970."

Again the finding of a causal relationship was necessarily implied. The second award also became final.

On 27 April 1972 Dr. Meyer conducted a further examination of the petitioner. His report thereof states that the petitioner's symptoms have "remained fairly stationary." The report concludes, "it is my opinion that Mr. Ringgold's symptoms currently and in the past, have not been secondary to an electric shock, but rather have been secondary to his arteriosclerotic heart disease, which has shown progression since 1965."

Based thereon the carrier issued its 7 June 1972 notice of claim status terminating all compensation and benefits as of the date of Dr. Meyer's examination stating, "claimant was discharged with no permanent disability." Thereafter the third hearing was held. The above report fairly summarizes Dr. Meyer's testimony.

The record reflects that it was not until Dr. Meyer's last mentioned report and the testimony at the third hearing that the question of the medical causal relationship to the 10 April 1970 industrially related electric shock was squarely put before Dr. Meyer. The evidence shows no improvement in the petitioner's physical condition, theretofore established by the first and second awards to be disabling.

The hearing officer rendered his third award from which we quote:

"4. That the preponderance of the medical evidence establishes that the applicant has an underlying condition of arteriosclerotic heart disease which is not causally related to the industrial injury of April 10, 1970. That the applicant sustained a temporary aggravation of said condition as a result of the industrial injury of April 10, 1970. That the applicant's medical condition resulting from the aforesaid industrial injury of April 10, 1970 became stationary on April 27, 1972 and is now stationary.

"5. That the applicant has sustained no permanent disability as a result of the industrial injury of April 10, 1970.

"6. That the applicant is entitled to medical, surgical and hospital benefits, as provided by law, from April 10, 1970 through April 27, 1972, inclusive.

"7. That the applicant is entitled to temporary total and/or temporary partial disability compensation benefits, as provided by law, from April 10, 1970 through April 27, 1972, inclusive."

At the third hearing Dr. Purcell testified that the petitioner sustained a causally related permanent disability. We do not find medical evidence to sustain the finding in the third award that the petitioner "sustained a temporary aggravation of said condition."

The question presented on this writ of certiorari is whether, after two awards finding a causal relationship between petitioner's condition and the 10 April 1970 industrial accident, which awards had become final, the Commission may after a subsequent hearing issue an award denying the causal relationship. We hold that it may not.

■ Abundant authority exists to support the proposition that whatever issues were determined or could have been determined in the original findings and award are res judicata, if not timely appealed. London v. Industrial Commission, 71 Ariz. 111, 115, 223 P.2d 929 (1950) and cases cited; Russell v. Industrial Commission, 104 Ariz. 548, 553, 456 P.2d 918 (1969) and cases cited.

■ ■ It is also clear that intermediate awards, orders, and findings become forever conclusive if no timely request for rehearing is sought on the matter. Pedigo v. Industrial Commission, 104 Ariz. 433, 454 P.2d 975 (1969); Wammack v. Industrial Commission, 83 Ariz. 321, 320 P.2d 950 (1958); Kelsey v. Industrial Commission, 79 Ariz. 191, 286 P.2d 195 (1955). The rationale behind this rule is fully explained in Talley v. Industrial Commission, 105 Ariz. 162, 166, 461 P.2d 83 (1969).

The general rule has been applied to situations similar to the present case. In Chavarria v. Industrial Commission, 99 Ariz. 315, 409 P.2d 26 (1965), the petitioner was granted a reopening based on psychological problems attributable to the injury by accident arising out of and in the course of his employment. The award was made conditional in amount and duration on facts to be later determined. The award became final. In a subsequent hearing evidence was introduced challenging the finding of causation, and establishing that no loss of earning capacity existed. The Court held that the previous findings of causation precluded the reexamination of that question, but insofar as the original award was conditional, the Commission could establish that no loss of earning capacity existed. Regarding the res judicata effect of findings of causation, see Dickey v. Industrial Commission, 83 Ariz. 283, 320 P.2d 470 (1958); see also Davila v. Industrial Commission, 98 Ariz. 258, 403 P.2d 812 (1965) (petition for rehearing filed after statutory time had run, to consider neurosis resulting from injury, not proper); Bedel v. Industrial Commission, 11 Ariz. App. 209, 463 P.2d 104 (1970) (causation established and not appealed is res judicata between workman and insurer, but not between insurer and workman's widow); Nunez v. Arizona Milling Co., 7 Ariz.App. 387, 390, 439 P.2d 834 (1968); Pew v. The Industrial Commission of Arizona, 20 Ariz.App. 113, 510 P.2d 424 (1973).

■ The awards of 29 January 1971 and 8 October 1971 clearly establish that the claimant suffered an accident arising out of and during the course of his employment, and that the effect of the accident was to aggravate a preexisting heart condition. We hold that Finding No. 4 of the 31 July 1972 award is improper in that it attempts to overturn the above-mentioned findings of causation, which had been allowed to become final. Furthermore, we find no support in the record for the findings that the injury was merely a "temporary aggravation" of a preexisting condition, or that the claimant's condition is now stationary.

The award of 31 July 1972 is vacated.

DONOFRIO, P. J., and OGG, J., concur.