539 P.2d 193

**Herbert TERRELL, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of
Arizona, Respondent,**

**A C & C Building Wreckers, Inc.,
Respondent Employer.**

**No. 1 CA–IC 1237.**

Court of Appeals of Arizona,
Division 1,

Department C.

Aug. 26, 1975.

Rehearing Denied Oct. 1, 1975.

Review Denied Nov. 4, 1975.

Gorey & Ely by Walter R. Ulman, Phoenix, for petitioner.

Greg L. Folger, Chief Counsel The Industrial Commission of Arizona, Phoenix, for respondent.

OPINION

STEVENS, Judge.

This is the third consideration of the matters arising out of this claim number. First there was 1 CA–IC 649, *Terrell v. The Industrial Commission of Arizona,* 19 Ariz.App. 468, 508 P.2d 355 (3 April 1973), review denied by the Arizona Supreme Court under number 11217PR. This will be referred to as "Terrell one." There followed 1 CA–IC 829, *Terrell v. The In-*

*dustrial Commission of Arizona,* 21 Ariz. App. 139, 517 P.2d 97 (27 December 1973), review denied by the Arizona Supreme Court under number 11482PR. This will be referred to as "Terrell two."

Herbert Terrell (petitioner) was injured on 25 February 1969 while in the employ of the A C & C Building Wreckers, Inc. (A C & C). A C & C should have carried workmen's compensation insurance and failed to do so. The petitioner sought to hold a major stockholder, one Frank Collins, liable. There was a hearing officer decision and award which was entered on 29 January 1971 and which was affirmed by The Industrial Commission on 9 April 1971. On 10 May 1971, the petitioner filed Terrell one in the Court of Appeals. The sole issue was whether Collins would be held liable. The Court affirmed that the industrial responsibility lay with A C & C.

On 14 May 1971, the petitioner filed a petition to reopen alleging a new, additional or previously undiscovered disability, A. R.S. § 23–1061(H), at the same time submitting a report by B. Anthony Dvorak, Jr., M. D., a specialist in neurological surgery. The petition went to a hearing which was held on 2 February 1972 with a hearing officer's findings and award denying the reopening on 31 March 1972. Dr. Dvorak and John Eisenbeiss, M. D., a neuro surgeon, both testified. In due time this award was brought to this Court and the result was Terrell two. In Terrell two we held that since Terrell one was still pending and unresolved at the time of the 2 February 1972 hearing, the Commission was without jurisdiction to hear the petition to reopen. [In Terrell two we mistakenly referred to the hearing as having been held on 2 February 1971.] Terrell two was later criticized by Department B of this Court in *Castillo v. The Industrial Commission of Arizona,* 21 Ariz.App. 465, 520 P.2d 1142 (1974). The conflict between Terrell two and Castillo was re-

solved by the Supreme Court in *Continental Casualty Company v. The Industrial Commission of Arizona,* 111 Ariz. 291, 528 P.2d 817 (1974). It now appears that Terrell two may have been in error under this factual setting, nevertheless it had become the law of the case.

After the mandate was issued in Terrell two, steps were taken to have a hearing on the 14 May 1971 petition to reopen which had been "dormant" since its filing as mandated by Terrell two.

On 2 April 1974 the petitioner by his counsel objected to the use of any matters in the file subsequent to the filing of the petition to reopen. Mr. Chris T. Johnson, the attorney for A C & C, responded that he would file the documents which he felt he was entitled to have considered. On 9 April 1974, the hearing having been set for 7 June 1974, Johnson gave notice that he would not appear at the hearing since Collins had been absolved of liability by Terrell one and since A C & C was then defunct. The hearing was set before a hearing officer who had not theretofore presided.

The petitioner caused a subpoena to be issued for Dr. Dvorak. No other subpoenas were requested or issued. The then counsel for the Commission appeared at the hearing. No documents were filed.

The hearing officer made it clear that since all of the file prior to the Commission's 9 April 1971 affirmance of the hearing officer's 29 January 1971 award had been placed on microfilm he would not consider any portion thereof except the 29 January 1971 award.[1] The 29 January 1971 award was reproduced from the microfilm at the request of the hearing officer and placed in the file. The only witnesses at the 7 June 1974 hearing were the petitioner and Dr. Dvorak.

To be fully aware of the setting we note that the 29 January 1971 award had as its basis a hearing which was held on 4 Au-

1. Since no issue is presented to this Court in relation to this decision by the hearing officer, we refrain from comment thereon.

gust 1970. We quote the critical findings which are set forth in that award, the hearing officer taking judicial notice of the award.

"11. As a result of the accident applicant was hospitalized at St. Joseph's Hospital, Phoenix, Arizona, for a lenghly [sic] period of time, during which complete evaluation and medical treatment was offered.

"12. John Eisenbeiss, M. D., a neurosurgeon, testified that in his opinion seizures exhibited by the applicant were not related to the fall of February 25, 1969. The basis of this opinion was that EEG changes did not indicate the result of trauma but rather toxic or metabolic disturbance, the negative brain scan, normal arteriogram, absence of trauma to the head and a spinal fluid protein of 92 which indicated changes that antedated the accident. Dr. Eisenbeiss further testified that even if evidence indicated trauma to the head during the fall, his opinion would not change because of the nature of the EEG changes.

"13. In view of the foregoing, applicant's request for further hearing for the purpose of showing trauma to the head during the fall is hereby denied.

"14. Applicant has fully recovered from the effects of a concussion sustained in the accident, and present 'blackouts' and seizures are not the result of the industrial accident.

"15. There is no indication that applicant's present complaints referable to his ankle are the result of the industrial injury.

"16. Applicant's condition with respect to the industrial injury became stationary on April 22, 1969.

"17. Applicant is entitled to compensation for total temporary disability from February 25, 1969 to April 22, 1969.

"18. Applicant has not sustained any permanent physical or mental disability as a result of the industrial accident of February 25, 1969."

The petitioner testified at the 7 June 1974 hearing that at the time of his injury he fell fourteen feet; landed on his head; was hit in the head by a falling 2 x 4; and that only after the injury did he have seizures.

The hearing officer examined the testimony of Dr. Dvorak in the light of the above-quoted portions of the 29 January 1971 award.

We extract portions of Dr. Dvorak's testimony.

Dr. Dvorak examined the petitioner on 25 February 1971 and in May 1974. On 25 February he examined the prior medical reports, including the EEG. He caused an EEG to be conducted in relation to the May 1974 examination. Dr. Dvorak testified that there is a difference between seizures by reason of toxic or metabolic causes on the one hand and seizures with a post-traumatic etiology. The former is an anatomical lesion and the latter is a physiological lesion. The symptom complex would be different, but the seizures might be similar. He stated that the petitioner's condition had improved and that the May 1974 seizures were causally related to the head trauma at the time of the 1969 injury. In the opinion of Dr. Dvorak, time is an important element in diagnosis. The substance of his opinion was that August 1970 was too early for this type of evaluation.

As of his February 1971 examination, Dr. Dvorak's opinion was the same as it was as a result of his May 1974 evaluation i. e., that the petitioner's seizures were traumatic in etiology.

The hearing officer weighed these medical opinions against the 29 January 1971 findings of the former hearing officer. He held that the 1971 award, being attacked only as to the individual versus the corporate responsibility, became final in all other respects. We agree. He held:

"9. That it is fundamental the applicant has the burden of proof in establishing the essential elements of his claim and

his entitlement to further benefits; *In Re Estate of Bedwell,* 104 Ariz. 443, 454 P.2d 985 (1969); that it is further fundamental that when a 'medical' reopening is sought, as here, the applicant has the burden of establishing the existence of a new, additional, or previously undiscovered (physical) condition and that said condition is causally related to the subject episode and said burden is not met merely by producing 'new evidence'; [Citations omitted] that this principle has been very succinctly stated in *Whitley v. Industrial Commission,* 19 Ariz. App. 519, 508 P.2d 778 (1973) as follows: '. . . The doctrine of *res judicata demands that issues which were* determined in the original findings and award of the Commission are final "the same as if they had been expressly determined by the original judgment" and may not be relitigated on a subsequent reopening. . . .'

"10. That specifically set forth in the hereinbefore quoted Findings from the (now *res judicata*) Award of January 29, 1971, or 'implicit' therein, *Ringgold v. Industrial Commission* [21 Ariz.App. 273, 518 P.2d 592], *supra,* are the recognized existence of a seizure and/or 'blackout' condition, a finding that said conditions were not causally related to the subject industrial episode, but were by reason of toxic or metabolic disturbances which ante-dated the subject episode, and that substantial question existed as to the occurrence of a trauma to applicant's head in the industrial episode, but even if such head trauma had occurred, this did not change the medical opinion relative to the metabolic and/or toxic cause of the metabolic applicant's seizures and/or blackouts, as opposed to being traumatically caused."

We agree.

In his further analysis of Dr. Dvorak's testimony when weighed against the findings in the January 1971 award, the hearing officer found that the petitioner had not borne his burden of proof on reopen-

ing. *Govan v. Industrial Commission of Arizona,* 15 Ariz.App. 545, 489 P.2d 1247 (1971), recognizes that a petitioner has sustained his burden when he presents uncontradicted medical testimony. While it is true there was no contrary medical testimony on 7 June 1974, in our opinion *Govan* does not control.

The award is affirmed.

NELSON, P. J., and WREN, J., concur.