41 P.3d 640

**Susan LOVITCH, Petitioner Employee,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Dennis Gold, DDS, PC, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. 1 CA–IC 01–0053.**

Court of Appeals of Arizona, Division 1, Department D.

March 7, 2002.

Cross & Lieberman by Lawrence H. Lieberman, Phoenix, Attorneys for Petitioner Employee.

Anita R. Valainis, Chief Counsel, The Industrial Commission of Arizona, Phoenix, Attorney for Respondent.

James F. Crane, General Counsel, State Compensation Fund by James B. Stabler, Phoenix, Attorneys for Respondents Employer and Carrier.

## OPINION

TIMMER, Judge.

¶ 1 Petitioner Susan Lovitch requests this court to set aside an Industrial Commission award dismissing her January 12, 2000, Petition to Reopen her 1993 claim after it found that the issues raised were previously litigated, final, and *res judicata.* The sole issue raised is whether the evidence supports Administrative Law Judge ("ALJ") Overholt's conclusion that Lovitch's Petition to Reopen was barred by the doctrine of *res judicata.*

We agree with Judge Overholt's decision and therefore affirm.

## FACTUAL AND PROCEDURAL HISTORY

### Initial Injury

¶ 2 Lovitch sustained an industrial injury on July 21, 1993, while working as a dental hygienist when she opened a faulty dental instrument sterilizing unit and inhaled Vapo–Sterile steam, a product that in solution form is made up of 72% ethanol (alcohol) and 0.23% formaldehyde. Lovitch thereafter suffered throat irritation, occasional coughing severe enough to produce mucus and decreased oximetry readings, subjective difficulty in breathing, anxious rapid breathing, chest discomfort and "vague malaise."

¶ 3 Lovitch's industrial insurance carrier, the State Compensation Fund ("Fund"), accepted the claim, but subsequently terminated Lovitch's temporary benefits without permanent disability effective April 22, 1994. Lovitch then requested a hearing, which was subsequently held over seven dates from March 15, 1995 through January 12, 1996 and presided over by ALJ Little. Multiple expert witnesses testified during the hearing.

¶ 4 Dr. Curry, who was board-certified in medical toxicology and emergency medicine, examined Lovitch on March 28, 1994, and diagnosed a "psychogenic vocal cord spasm" that originated from the larynx and was "triggered by odors, stress, etc." He suggested that vocal cord spasm "(whether intentional or unintentional)" explained Lovitch's "bark-like cough" and "lack of response to antiasthmatics." Dr. Curry testified that "chemical exposure does not cause psychogenic vocal cord [dysfunction] ... unless we are now speaking of an anxiety reaction." He declined to render a causal opinion on the "hysterical nature" of the condition "because I'm not a psychologist or a psychiatrist."

¶ 5 Neither Mamiko Odegaard, Ph.D., Lovitch's psychological expert, nor Jack Tuber, M.D., her pulmonary specialist, testified about vocal cord dysfunction. Irwin Finkelstein, M.D., a psychiatrist who examined Lovitch, testified that she had no permanent psychiatric or psychological conditions causally related to her industrial injury. Gerald Schwartzberg, M.D., a pulmonary specialist who examined Lovitch and was aware of Dr. Curry's diagnosis and Lovitch's ongoing symptoms, testified that Lovitch's industrial injury was medically stationary without permanent impairment.

¶ 6 Regarding the vocal cord spasm diagnosed by Dr. Curry, ALJ Little found that Dr. Curry "was of the opinion that [Lovitch] has numerous complaints, but could not, within a reasonable degree of medical probability, causally relate any of the problems to applicant's industrial injury." ALJ Little additionally found no permanent pulmonary, neurological, or psychological conditions causally related to the industrial injury and therefore closed the claim without permanent impairment. This court affirmed the award in a November 26, 1999, memorandum decision, which held that ALJ Little's award implicitly adopted Dr. Finkelstein's and Dr. Schwartzberg's opinions rather than those of Dr. Odegaard and Dr. Tuber.

### 1997 Award

¶ 7 Lovitch filed a Petition to Reopen on December 24, 1996, supported by a report from Kaye H. Kilburn, M.D., who had diagnosed multiple conditions as causally related to Lovitch's industrial injury. The issues raised by the petition were litigated and the Fund raised a *res judicata* defense.

¶ 8 Lovitch claimed that her symptoms, excepting psychological symptoms, had worsened since the ALJ had closed her claim. Dr. Tuber testified again, this time opining that one of Lovitch's primary problems was a "vocal cord dysfunction secondary to the inhalant events," a condition that he suggested was a new anatomic abnormality, even though he admitted that as early as June 14, 1995, prior to his 1995 testimony, he had diagnosed this condition as globus hysterica, a psychiatric condition.

¶ 9 Although Dr. Schwartzberg testified that vocal cord dysfunction could respond to various odors, was sometimes found among persons who complain of multiple chemical sensitivities, and could cause a throat-closing sensation, hoarseness, and a respiratory croup-like sound, he had found no objective evidence that Lovitch suffered from the condition. In a December 30, 1997 award, ALJ

Turney adopted Dr. Schwartzberg's opinion rejecting Dr. Tuber's diagnosis of vocal cord dysfunction, because Dr. Schwartzberg had found no objective evidence that Lovitch suffered from that condition. Judge Turney additionally found that Judge Little's 1997 award was *res judicata* regarding the issues of permanent psychological or psychiatric impairment. The ALJ then denied the petition finding that Lovitch did not have any "new, additional or previously undiscovered condition causally-related to her industrial injury of July 21, 1993." The December 30, 1997 award became final.

### 1999 Petition to Reopen

¶ 10 Lovitch next filed a Petition to Reopen on February 24, 1999, supported by a February 15, 1999, report from toxicologist John B. Sullivan, Jr., M.D., who had diagnosed Lovitch with irritant-induced vocal cord dysfunction he thought causally related to her "occupational exposure." The Fund denied the petition and after a hearing was scheduled, filed a motion to dismiss based on the *res judicata* effect of ALJ Turney's 1997 award.

¶ 11 After requesting written arguments, and reviewing the evidence submitted, ALJ Schatz dismissed Lovitch's petition and determined as a matter of law that "[t]he question of the existence of vocal cord dysfunction, causally related to Applicant's industrial injury has been litigated. Applicant has had her day in court on the issue of the existence of vocal cord dysfunction and its causal relationship to her industrial injury." The 1999 award became final without protest.

### Current petition to reopen

¶ 12 Lovitch filed her third and current Petition to Reopen on January 12, 2000, submitting with it a January 5, 2000, report from John B. Sullivan, M.D., and an October 18–22, 1999, report from his consultant, Ronald Balkissoon, M.D. The petition seeks treatment for vocal cord dysfunction and dysphonia. The Fund denied the petition and again raised a *res judicata* defense.

¶ 13 Following hearings, ALJ Overholt dismissed Lovitch's petition after finding in his March 14, 2001 award that "the question of whether [Lovitch] has vocal cord dysfunction causally related to the subject industrial inju-

ry has been previously litigated and decided adversely to the applicant" in the Commission's 1997 award, and that the Commission's 1999 award affirmed the *res judicata* effect of the 1997 award. He affirmed these findings upon review, and this special action followed.

¶ 14 Lovitch argues that the ALJ erred by denying her petition on the basis of *res judicata* because she had introduced new evidence of a previously undiagnosed condition sufficient to allow reopening of her claim. As new evidence of her diagnosis, Lovitch cites Dr. Balkissoon's report, in which he recorded clinical observations of "profound closure" of Lovitch's vocal cords during laryngoscopy with forced vital capacity maneuvers, especially during the expiratory phase, an observation he thought "consistent" with variable upper-airway restriction or vocal cord dysfunction.

¶ 15 As additional new evidence of a previously undiscovered condition, Lovitch cites to a medical article written by Dr. Balkissoon and his colleagues. The article influenced Dr. Schwartzberg to change some of his opinions since his prior testimony. We decline to consider the article itself because it is not contained in the Commission's record, and we cannot consider evidence not presented to the ALJ. *Schultz v. Indus. Comm'n*, 44 Ariz. 357, 361, 37 P.2d 372, 373 (1934). We will, of course, consider the witnesses' testimony that referenced and related to the article.

### STANDARD OF REVIEW

¶ 16 We will affirm a Commission decision if it is reasonably supported by the evidence after reviewing the evidence in a light most favorable to sustaining the award. *Salt River Project v. Indus. Comm'n*, 128 Ariz. 541, 544–45, 627 P.2d 692, 695–96 (1981). When facts are not in dispute, questions of issue preclusion are determined using an independent standard of review. *Special Fund Div. v. Tabor*, 201 Ariz. 89, 92, ¶ 20, 32 P.3d 14, 17 (App.2001).

### DISCUSSION

¶ 17 Lovitch has the burden to prove her entitlement to reopen her claim by

showing a new, additional, or previously undiscovered condition and a causal relationship between that new condition and the prior industrial injury.[1] *Stainless Specialty Mfg. Co. v. Indus. Comm'n*, 144 Ariz. 12, 19, 695 P.2d 261, 268 (1985); Ariz.Rev.Stat. ("A.R.S.") § 23–1061(H).[2] A change of condition may be shown by a change in the claimant's causally related physical condition or a change in medical procedures necessary to treat a causally related condition. *Id.* In the instant claim, the ALJ did not reach these issues because he determined that the *res judicata* effect of the previous 1997 and 1999 awards precluded further adjudication of Lovitch's claim.

¶ 18 This court has previously observed that A.R.S. § 23–1061(H) strikes a balance between finality principles, which preclude relitigation of issues that were or that could have been determined when the claim was closed or at previous adjudications, and remedial principles, which allow the Commission continued jurisdiction over claims to adjust for changed conditions. *Perry v. Indus. Comm'n*, 154 Ariz. 226, 228–29, 741 P.2d 693, 695–96 (App.1987). The balance is struck by applying preclusion principles to conditions that were "existing and known" when the claim was closed and permitting reopening for conditions that are new, additional, or previously undiscovered. *Id.* Therefore, "issue preclusion" applies when there has been actual litigation of the issue in a prior proceeding and the party against whom the doctrine is to be invoked had a full opportunity to litigate the issue, the issue was essential to a final judgment, and a final judgment was entered. *Circle K Corp. v. Indus. Comm'n*, 179 Ariz. 422, 425, 880 P.2d 642, 645 (App.1993).

¶ 19 Reopening for a new or additional condition is precluded if a claimant produces new evidence that merely controverts that which was produced in previous proceedings or evinces a doctor's change of mind. *Stainless*, 144 Ariz. at 19, 695 P.2d at 268; *Perry*, 154 Ariz. at 229, 741 P.2d at 696. "This same test does not apply to previously undiscovered conditions." *Perry*, 154 Ariz. at 229, 741 P.2d at 696. In such cases, new evidence may support reopening if the evidence or change in a doctor's testimony involves a "previously undiscovered condition," which is causally related to the industrial injury. *Id.* (citing *Stainless*, 144 Ariz. at 19 n. 3, 695 P.2d at 268).

¶ 20 Lovitch argues that her condition is a previously undiscovered one and that the new finding on laryngoscopy, coupled with Dr. Schwartzberg's change of mind based on the 1998 article, reveal this condition to be an irritant-induced vocal cord dysfunction. She contends that *Pascucci v. Indus. Comm'n*, 126 Ariz. 442, 616 P.2d 902 (App.1980), "fits her case like a glove" because her condition has now been verified just as Pascucci's condition of a herniated disc was verified after surgery as a previously undiscovered condition.

¶ 21 In *Pascucci*, this court reviewed the Commission's award denying Pascuccci's petition to reopen his back injury claim. The award found that Pascucci had a herniated disc causally related to his industrial injury, but denied his petition because the ALJ had found that the herniated disc was not new.[3] 126 Ariz. at 444, 616 P.2d at 904. Upon review, the court decided that the herniated disc was either a new or a previously undiscovered condition. *Id.* at 445, 616 P.2d at

1. The comparative dates for the current reopening are March 10, 1999, the date the Fund denied Lovitch's last Petition to Reopen, and January 12, 2000, the date Lovitch filed the current petition. *See Phoenix Cotton Pickery v. Indus. Comm'n*, 120 Ariz. 137, 139, 584 P.2d 601, 603 (App.1978).

2. Section 23–1061(H) provides, in pertinent part, as follows:

   An employee may reopen the employee's claim to secure an increase .... [of] additional benefits by filing with the commission a petition requesting the reopening of the employee's

claim upon the basis of a new, additional or previously undiscovered temporary or permanent condition, which petition shall be accompanied by a statement from a physician setting forth the physical condition of the employee relating to the claim.

3. Although on appeal the carrier argued the applicability of *res judicata*, the ALJ's decision was based on his resolution of evidentiary disputes, not on the doctrine of *res judicata*. Therefore, Lovitch is not similarly situated before this court as Pascucci, who had established findings on causation supporting his claim.

905. Coupled with the ALJ's finding of causation, the verification of that condition was sufficient to support reopening. While there is dicta in *Pascucci* that the case turned on the new discovery of the "true cause" of Pascucci's ongoing back pain, the decision in fact rested on the conclusion that the disc herniation *condition* was previously undiscovered. The causal determination had already been made by the ALJ at the hearing level.

¶ 22 In the present case, we are not convinced that the laryngoscopy revealed a previously undiscovered condition. Rather, the procedure confirmed a previously known and diagnosed condition of vocal cord dysfunction. Review of the record reveals that Lovitch was in fact diagnosed with vocal cord spasm or dysfunction as early as March, 1994 by Dr. Curry, and then again in June, 1995 by Dr. Tuber, and finally in December, 1998 by Dr. Sullivan. Two of these diagnoses existed before issuance of the 1997 award, and the third existed before issuance of the 1999 award.

¶ 23 Additionally, unlike the applicant in *Pascucci*, Lovitch has never established a causal connection between her condition and her industrial injury. Indeed, the issue has been twice litigated and adversely determined against her. *See Waller v. Indus. Comm'n*, 6 Ariz.App. 249, 251, 431 P.2d 689, 691 (1967) (holding that relitigation of the cause of surgery was barred by previous final determination of the same issue); *Govan v. Indus. Comm'n*, 23 Ariz.App. 261, 263, 532 P.2d 533, 535 (1975) (holding that doctrine of *res judicata* bars relitigation of the cause of applicant's psychological condition); *Terrell v. Indus. Comm'n*, 24 Ariz.App. 389, 392, 539 P.2d 193, 196 (1975) (affirming award denying reopening on basis that causation had been determined and was *res judicata*.) Specifically, the 1996 award determined that Dr. Curry's diagnosis of psychogenic vocal cord dysfunction was not causally related to Lovitch's industrial injury. The award became final and *res judicata*. Its *res judicata* effect was affirmed by the 1997 award. The 1997 award also adversely determined against Lovitch the issues concerning the existence and cause of an irritant-induced vocal cord dysfunction.[4] That award became final, and was later appropriately relied upon by ALJ Schatz when he determined its *res judicata* effect and dismissed Lovitch's petition in the 1999 award.

## CONCLUSION

¶ 24 Issue preclusion bars relitigation of an issue if the issue was previously litigated, determined, and necessary to final judgment. *Special Fund Div. v. Tabor*, 201 Ariz. at 92, ¶ 20, 32 P.3d at 17. Lovitch had a full opportunity to and actually did litigate the existence of an irritant-induced vocal cord dysfunction as well as its causal relationship to her 1993 industrial injury. These issues were determined adversely to her as essential findings in the 1997 and 1999 awards. Thus, we conclude that issue preclusion applies to bar relitigation of these issues, and we therefore affirm.

CONCURRING: SHELDON H. WEISBERG, Presiding Judge, and JON W. THOMPSON, Judge.

---

4. Contrary to Lovitch's argument, even though ALJ Turney adopted Dr. Schwartzberg's opinion in 1997 that Lovitch did not have the chemically induced vocal cord dysfunction diagnosed by Dr. Tuber and found that Lovitch did not have a new, additional, or previously undiscovered condition causally related to her industrial injury, this finding did not rule out the possibility that Lovitch has a vocal cord dysfunction from some other cause unrelated to the industrial injury.