NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STEPHANIE KNIFFIN WILDEMAN, *Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

SOFRITA L.L.C., *Respondent Employer*,

THE HARTFORD, *Respondent Carrier*.

No. 1 CA-IC 16-0026
FILED 1-4-2017

---

Special Action - Industrial Commission

ICA Claim No.  20160-390363
Carrier Claim No. Y67C10982
The Honorable Michael A. Mosesso, Administrative Law Judge

**AWARD SET ASIDE**

---

COUNSEL

Arizona Injury Law Group, PLLC, Phoenix
By Weston S. Montrose
*Counsel for Petitioner*

Industrial Commission of Arizona, Phoenix
By Jason M. Porter, Jonathan Hauer
*Counsel for Respondent ICA*

---

**MEMORANDUM DECISION**

Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Andrew W. Gould and Judge Patricia A. Orozco (Retired) joined.

---

**S W A N N**, Judge:

**¶1**        This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review dismissing a hearing request under A.R.S. § 23-1061(J).  Because we find an abuse of discretion, we set aside the award.

## FACTS AND PROCEDURAL HISTORY

**¶2**        The claimant worked as a restaurant manager for the respondent employer, Sofrita, LLC.  On December 22, 2015, she slipped and fell at work, injuring her back, neck, and shoulder.  The claimant filed a workers' compensation claim, which was accepted for benefits.  She began receiving chiropractic treatment from Dr. Nicholas Schultz.  When Dr. Schultz recommended additional treatment sessions, the claimant requested authorization from the respondent carrier, The Hartford ("Hartford").  Hartford obtained a peer-to-peer review ("UR report") of the requested treatment and denied it.  The UR report stated in pertinent part:

> The request for certification of the medical service(s) listed below has been reviewed . . . by a qualified peer clinical reviewer identified below.  The peer clinical reviewer provided the opportunity for peer-to-peer review prior to making a determination of the medical necessity and appropriateness of the requested treatment.
>
> ***Requested Services:*** *Chiropractic treatment x 10 for the neck, low back, and shoulder. . . .*
>
> **Determination:** non-certified
>
> . . .
>
> **Reason for non-certification:** At your request I have reviewed the medical records pertaining to the above-captioned claimant, at which time a preauthorization review was performed for medical necessity.

2

**History:** *The claimant is female and is 51 years of age.* The injury occurred dated 12/22/15, when she stepped on the back deck, slipped, and slid down a ramp. The diagnosis is neck, low back and shoulder pain. She has had medications and chiropractic times 12. *The most recent note dated 01/11/16, from the chiropractor indicated that she was doing some light housekeeping. Additional treatment was recommended.* The request is for chiropractic treatment x 10 for the neck, low back, and shoulder.

**Criteria:** ODG Neck and Upper Back (Acute and Chronic) Manipulation

*Manipulation is recommended as an option.* In limited existing trials, cervical manipulation has fared equivocally with other treatments, like mobilization, and may be a viable option for patients with mechanical neck disorders. However, *it would not be advisable to use beyond 2–3 weeks if signs of objective progress towards functional restoration are not demonstrated. Further, several reports have, in rare instances, linked chiropractic manipulation of the neck in patients 45 years of age and younger to dissection or occlusion of the vertebral artery. The rarity of cerebrovascular accidents makes any association unclear at this time and difficult to study.*

**Conclusion:** Peer to peer discussion has not been achieved despite calls to the MD's office. The history and documentation do not objectively support the request for continued chiropractic therapy. The clear objective [evidence] of benefit, including functional improvement, has not been submitted. *There is no evidence that the claimant is unable to continue her rehabilitation with an independent home exercise program (HEP) at this time.* The medical necessity of this request has not been clearly documented. Recommend non-certification.

(Emphases added.)

¶3        After denial of the recommended treatment, the claimant's attorney wrote to the ICA and requested an A.R.S. § 23-1061(J) investigation and hearing "if necessary" into Hartford's refusal to authorize the additional chiropractic care. He attached Hartford's UR report to his request. The ICA claims department then wrote to Hartford's claim representative and requested a response to the claimant's § 1061(J) request.

It also referred the request to the ALJ Division for a hearing. Hartford responded that based on the UR report, additional chiropractic care was "not medically appropriate," and that "[i]n order to resolve this issue an Independent Medical Exam" ("IME") had been scheduled.

¶4 The ALJ next wrote to the claimant's attorney and requested "medical records and/or other records that support the [§] 1061(J) petition." The claimant's attorney responded by attaching Hartford's UR report to confirm that Hartford "denied a benefit." The ALJ replied that Hartford's denial of benefits did not establish that it owed the claimant benefits. He wrote in part:

> A medical record from a healthcare provider that recommends treatment is evidence for a benefit owed and thus a prima facie showing of such. Applicant is provided an additional five (5) days to submit this supporting documentation. If none is filed, the February 18, 2016 [§] 1061(J) request will be dismissed.

The claimant's attorney responded by attaching the UR report, which he explained established that a benefit owed had been denied.

¶5 The ALJ entered an award dismissing the claimant's § 1061(J) hearing request because she had failed to make a prima facie showing of a benefit owed. The claimant timely requested administrative review arguing that § 23-1061(J) requires only a medical report or other documentation. The ALJ rejected the argument and affirmed the award. The claimant next brought this appeal.

**DISCUSSION**

¶6 An industrially injured claimant is entitled to receive all reasonably required medical, surgical and hospital benefits. *See* A.R.S. § 23-1062(A). The reasonable necessity of care is a medical question. *See generally, Bergstresser v. Indus. Comm'n*, 118 Ariz. 155, 157 (1978). If a claimant believes she is entitled to medical care which the carrier refuses to provide, her recourse is to file a petition for investigation by the ICA under A.R.S. § 23-1061(J), which is typically referred to as a "J" request.

¶7 Once a "J" request is filed, the ICA notifies the insurance carrier, which has ten days to respond. *See Arizona Workers' Compensation Handbook* § 9.6.2.2, at 9-22 to -23 (Ray J. Davis, et al., eds., 1992 and Supp. 2016). If the matter cannot be resolved informally or no response is received

from the carrier, the issue is referred to the ALJ division for hearing within sixty days. *Id.*; *see also* A.R.S. § 23-1061(J).

**¶8** We consider the evidence in a light most favorable to upholding the ALJ's award. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002). In reviewing findings and awards of the ICA, we defer to the ALJ's factual finding, but review questions of law de novo. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003). We review statutory interpretation questions de novo. *Hahn v. Indus. Comm'n*, 227 Ariz. 72, 74, ¶ 5 (App. 2011). "If the statute's language is clear and unambiguous, we give effect to that language and do not apply any other rule of statutory construction." *Id.* at ¶ 7.

**¶9** A.R.S. § 23-1061(J) reads in relevant part:

> The commission shall investigate and review any claim in which it appears to the commission that the claimant has not been granted the benefits to which such claimant is entitled. *If the commission determines that payment or denial of compensation is improper in any way, it shall hold a hearing . . . .*

We read this section to mean that when a denial of compensation was facially improper, the commission should proceed immediately to a hearing on the merits. Likewise, when no colorable argument appears from the hearing request that a denial of compensation was improper, it need not conduct a hearing. However, when it is unclear from the materials accompanying a hearing request whether payment was properly denied, the commission should hold a hearing to determine whether the denial was proper.

**¶10** In this case, the ALJ refused to hold a "J" hearing because he found that the claimant had failed to make a prima facie showing of entitlement to the denied chiropractic care. And the ALJ deemed the UR report to be insufficient evidence of "a benefit owed" and required the claimant to produce "a medical record from a healthcare provider that recommends treatment." But the UR report stated that chiropractic treatments were "recommended as an option" for these types of injuries, despite rejecting it for the claimant.

**¶11** The UR report concluded that additional "manipulation" was not medically necessary nor was it "advisable to use [manipulation] beyond 2–3 weeks if signs of objective progress towards functional restoration are

5

not demonstrated." The report then recited a rare complication in patients under "45 years of age," as support for the denial of benefits.[1]

¶12          Here, the 51-year-old claimant is outside the "rare" complication risk group — which the UR report acknowledges may not even be a complication. The available facts demonstrate that one month after the accident she made the request for additional treatment, and that during that time she may have had functional improvement based on her ability to perform "some light housekeeping." Nevertheless, the UR report determined that the claimant had not demonstrated that an alternative treatment, "HEP," was sufficient despite the treating doctor's recommendation for additional chiropractic treatments — and a lack of any mention of HEP anywhere else in the record. We conclude that the faulty reasoning of the UR report was sufficient evidence to warrant a "J" hearing. The ALJ's requests for additional medical documentation as a condition for granting the hearing were duplicative and unnecessary. On these facts, there is clearly a question of whether the denial was proper and the ALJ abused his discretion by not conducting a hearing to determine if the treatment was properly denied.

---

[1]     After the claimant requested a review of the award but before the ALJ issued the decision upon review, the respondent carrier submitted an IME, which supported its denial of benefits, and requested subpoenas of two doctors to testify as experts in any hearing. "A presiding administrative law judge's award or decision . . . or award or decision upon review . . . shall be based upon . . . [t]he record as it exists at the conclusion of the hearings." A.A.C R20-5-159. We think that in the case of a denial of a hearing, the record on review of that denial should also be limited to the record as it existed when the denial was issued. Therefore, we do not consider the IME in our analysis. It is unclear whether the ALJ considered the IME in his decision upon review, but his affirmation of the original award did mention it. To the extent the ALJ relied on the IME or any of the parties' actions after the initial denial of claimant's request for a hearing, it was error.

## CONCLUSION

¶13     For the foregoing reasons, we set aside the award.



AMY M. WOOD • Clerk of the Court
FILED:   AA