NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

DENG ATEM, *Petitioner,*

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

HOLSUM BAKERY OF TOLLESON, LLC., *Respondent Employer,*

ACE AMERICAN INSURANCE COMPANY, *Respondent Carrier.*

No. 1 CA-IC 18-0037
FILED 1-15-2019

---

Special Action – Industrial Commission
ICA Claim No. 20160-550113
Carrier Claim No. WC20161048064
Paula R. Eaton, Administrative Law Judge

**AWARD AFFIRMED**

---

COUNSEL

Deng Atem, Glendale
*Petitioner*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent*

Jardine, Baker, Hickman & Houston, P.L.L.C., Phoenix
By Stephen M. Venezia
*Counsel for Respondent Employer and Respondent Carrier*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Jon W. Thompson joined.

---

**W I N T H R O P**, Judge:

¶1    This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review.  Petitioner Deng Atem ("Atem") contends, in *pro per*, the administrative law judge ("ALJ") erred in finding he was able to return to work and closing his workers' compensation claim.  He asserts that the pain in his lower back continues to prevent him from working in any capacity.  Finding no error in the ALJ's decision, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2    Holsum Bakery of Tolleson, LLC., ("Holsum Bakery") hired Atem as a shipment loader in August 2013.  On January 31, 2016, Atem injured his lower back when two sixty-pound bread baskets fell from above Atem and struck him in the lower back, causing him to fall to the floor.

¶3    Although injured, Atem continued to work in a limited capacity until April 28, 2016.  He eventually filed a claim with Holsum Bakery's insurance carrier, Ace American Insurance Company ("Ace").  Ace accepted the claim for medical benefits only, with no time lost from work, and closed the claim without a determination of permanent impairment or disability.  Atem timely filed a request with the ICA for a hearing on the claim.

¶4    The hearing occurred on July 26, 2016, but neither Holsum Bakery nor Ace appeared.  After the hearing, an ALJ determined Atem was entitled to medical, surgical, and hospital benefits from the date of his injury until his condition became stationary.  In addition, the ALJ awarded Atem temporary partial disability benefits as of April 28, 2016, until his work status changed.

¶5            Ace later issued Notices of Claim Status indicating: (1) Atem had returned to work in a light duty capacity as of March 6, 2017, and (2) Atem's medical condition relating to the industrial injury was stationary, that he had sustained a permanent impairment, and that the claim was being closed on an unscheduled basis pursuant to Arizona Revised Statutes ("A.R.S.") section 23-1044(C).[1]  Atem protested these notices and requested a hearing.  The issues were consolidated, and formal hearings were held on September 8, and December 19-20, 2017.

¶6            The hearings focused on: (1) the date Atem was capable of returning to light duty work status, thus affecting the amount of temporary disability benefits previously awarded, and (2) whether Atem's medical condition was stationary as the employer and the carrier contended, or whether he still needed active medical treatment, as Atem contended.  As it relates to these issues, the ALJ heard testimony from Atem and Atem's treating orthopedic surgeon, Dr. Issada Thongtrangan.  In addition, the ALJ heard testimony from orthopedic specialist Dr. John Beghin, who reviewed Atem's medical records and examined Atem at the request of Ace and Holsum Bakery.  Dr. Beghin authored a report concluding that Atem had reached maximum medical improvement for his injury and had sustained a seven percent ("7%") permanent impairment as a result of the industrial episode.  Dr. Beghin also recommended some limited supportive care.  Ace relied on Dr. Beghin's report in issuing the contested Notices of Claim Status.

¶7            Atem testified that his low back pain persisted despite conservative medical care, including multiple steroid injections and physical therapy.  He eventually had surgery to remove what Dr. Thongtrangan identified as a small "disc protrusion" on September 1, 2016.  Atem did briefly return to work in November, but because of persistent radiating pain in his legs, he returned to Dr. Thongtrangan, who placed

---

[1]            Unlike "scheduled" injuries, a worker who has sustained a permanent impairment as a result of an unscheduled industrial injury must show that such impairment has caused a loss of earning capacity in order to be awarded permanent disability benefits.  *Compare* A.R.S. § 23-1044(B), *with* -1044(C).  A labor market survey conducted in April 2017 determined Atem could work at no loss of earnings as a non-confrontational security officer.  On that basis, Ace closed Atem's claim effective June 4, 2017.

Atem on "no work" status. According to Atem, his low back and radiating pain were still present and he was unable to work.

¶8        At a subsequent hearing, Dr. Thongtrangan described his evaluation and treatment of Atem, and opined that he properly placed Atem on "no work status" from December 6, 2016 to June 30, 2017, and Atem's condition did not become stationary until June 30, 2017. Dr. Beghin testified in support of his previously-issued report, opining that Atem's subjective complaints of pain were not consistent with the objective physical examination findings or radiographic studies. Those studies, including a follow-up MRI evaluation, did not reveal any significant disc protrusion or nerve root compression, and the facet joints were within normal limits throughout the lumbar spine region. Dr. Beghin further opined that Atem was capable of returning to light duty work status as of December 13, 2016, that his medical condition was stationary as of June 4, 2017, and that, as a result of the industrial injury, Atem had sustained a 7% permanent impairment. Finally, Dr. Beghin recommended "supportive care limited to one year in the form of two physician visits; an imaging study; anti-inflammatory medications; and three lumbar epidural steroid injections."

¶9        The ALJ issued a decision on January 31, 2018. She found Dr. Beghin's testimony more credible, that Atem was capable of returning to work as of March 6, 2017, and he was not entitled to temporary compensation benefits after that date. In addition, the ALJ found Atem's medical condition to be stationary as of June 4, 2017, and adopted Dr. Beghin's recommendation for limited supportive care. Inexplicably, the ALJ also found the applicant had not sustained any permanent impairment. Atem timely requested a review of the award. On April 24, 2018, the ALJ issued a decision upon review modifying the original award to reflect Dr. Beghin's testimony that, as a result of the industrial injury, Atem had sustained a 7% permanent impairment of the whole person. In all other respects, the ALJ affirmed the original award. Atem timely petitioned this court to review the ALJ's decision and decision upon review.[2]

---

[2]        After this special action commenced, Atem attempted to submit a supplemental record that included letters and medical documents obtained after the final ICA hearing held on December 20, 2017. We declined to accept the additional information, explaining that "this court will not consider documents on appeal which are not part of the certified record."

**JURISDICTION AND STANDARD OF REVIEW**

**¶10**      We have jurisdiction in this matter pursuant to A.R.S. §§ 12-120.21(A)(2) and 23-951(A), and Arizona Rule of Procedure for Special Actions 10.  When reviewing findings and awards of the ICA, we consider the evidence in the light most favorable to upholding the award.  *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002) (citation omitted).  The petitioner bears the burden of demonstrating error, and we will affirm the ALJ's award if "any reasonable interpretation of the evidence" supports it.  *Hartford v. Indus. Comm'n*, 178 Ariz. 106, 110 (App. 1994) (citations omitted).  Further, when there is a conflict in expert medical testimony, it is the duty of the ALJ to resolve all conflicts in evidence and draw all warranted inferences, and we defer to the ALJ's decision in that regard.  *See Malinski v. Indus. Comm'n*, 103 Ariz. 213, 217 (1968) (citation omitted).

**ANALYSIS**

**¶11**      In his non-compliant opening brief, Atem asserts he continues to live with lower back pain and is unable to work.  When a claimant attempts to establish an industrial injury that is not clearly apparent to a layman, expert medical testimony is required.  *W. Bonded Prods. v. Indus. Comm'n*, 132 Ariz. 526, 527 (App. 1982).  As noted above, when faced with conflicting expert medical testimony, it is the ALJ's duty to resolve all conflicts in the evidence and draw all warranted inferences.  *See Holding v. Indus. Comm'n*, 139 Ariz. 548, 551 (App. 1984) ("The administrative law judge is the sole judge of witness credibility.") (citation omitted).  The ALJ may consider the qualifications and backgrounds of the expert witness and their experience in diagnosing the type of injury incurred, as well as the diagnostic methods used.  *Carousel Snack Bar v. Indus. Comm'n*, 156 Ariz. 43, 46 (1988).

**¶12**      In this case, the ALJ found Dr. Beghin's testimony was more credible and adopted his view of Atem's condition.  Specifically, Dr. Beghin opined:

> [Atem] never really did suffer from a disc herniation. . . .  He . . . complain[ed] of headaches, neck pain, shoulder pain, back pain, bilateral leg pain; and he basically had nothing of significance on the MRI scan.  So he has the surgery and Dr. Thongtrangan's notes indicate that it was just a small subligamentous protrusion—which tells me, again, it was probably nothing—that is why he didn't get better. . . .  So then I examined him.  As I said, everything was normal from

a neurological perspective. . . . When I tapped his tendon down by his ankle, he said he had pain radiating all the way up to his back, which makes no sense.

¶13   Here, the ALJ had full opportunity to evaluate the credibility of both expert witnesses and resolved the conflicting evidence in favor of Dr. Beghin's opinions. The ALJ's decision as modified and the decision on review are supported by substantial medical evidence and, as such, must be affirmed.

## CONCLUSION

¶14   For the foregoing reasons, we affirm the award.



AMY M. WOOD • Clerk of the Court
FILED: AA

6