NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

ROGER BOWSER, *Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent*,

PULICE CONSTRUCTION, INC., *Respondent Employer*,

ARGONAUT INSURANCE CO, ARGO GROUP US, *Respondent Carrier*.

No. 1 CA-IC 23-0033

FILED 03-04-2025

---

Petition for Special Action from the Superior Court in Maricopa County
ICA Claim No. 20022530322
Carrier Claim No. 40-410071
The Honorable Amy L. Foster, Administrative Law Judge

**AFFIRMED**

---

COUNSEL

Roger Bowser, Mesa
*Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Afshan Peimani
*Counsel for Respondent*

Jardine Baker Hickman & Houston PLLC, Phoenix
By K. Casey Kurth
*Counsel for Respondent Employer/Carrier*

---

**MEMORANDUM DECISION**

Judge Andrew M. Jacobs delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Vice Chief Judge Randall M. Howe joined.

---

**J A C O B S**, Judge:

¶1        Petitioner, Roger Bowser, challenges an Industrial Commission of Arizona ("ICA") award terminating his long-term dental care that flowed from a 2002 industrial injury.  Bowser argues the Administrative Law Judge ("ALJ") erred in concluding that he is not entitled to continued benefits because his injury is medically stationary, he is not permanently impaired, and any further treatment he desires is thus unrelated to the industrial injury.  Because sufficient evidence supports the award, we affirm.

## FACTS AND PROCEDURAL HISTORY

### A.        Bowser Is Injured at Work and Receives Dental Benefits for 20 Years.

¶2        In 2002, Bowser was working as a foreman on a curb crew when a coworker struck him in the face.  Bowser's face was bruised and cut, and several teeth were chipped and dislodged.

¶3        Over the next 20 years, Bowser had four root canals, and two crowns placed on the teeth damaged by the injury and wore retainers or aligners to hold the damaged teeth in place.

¶4        Bowser also experienced significant jaw problems which his providers described as temporomandibular disorder ("TMD").  These issues continued until 2022 when Bowser had a severe face cramp when removing his aligners, after which the symptoms stopped.  Bowser saw a jaw expert for the first time in 2023.  The expert opined to Bowser  that his jaw was likely out of place for 20 years until it self-corrected in this incident.  Despite the self-correction, the expert told Bowser he would need continued treatment to keep his jaw stable.

¶5        Bowser's claim was accepted in September 2002, and he received benefits until October 2, 2022, when Argonaut Insurance

Company stopped paying for Bowser's dental care. In response, Bowser requested a hearing to clarify what treatment he was entitled to under the original ICA award. Argonaut and Bowser's former employer, Pulice Construction Inc., argued Bowser was only entitled to a "bi-annual retainer replacement under supportive care."

### B. The ALJ Holds Hearings and Terminates Bowser's Benefits.

¶6 At the ALJ hearing, the issues were (1) whether Bowser's injury was stationary, (2) whether there was permanent impairment, and (3) what supportive care Bowser needed.

¶7 Bowser alleged the judge overseeing the criminal assault trial arising from the injury promised him "lifetime dental care[,]" and that Argonaut then verbally confirmed he would receive it. Bowser clarified he was seeking that "continuation of [his] dental coverage that [he has] had for the last 20-some years[.]" To that end, he asked the court to approve dental care for the teeth injured in the 2002 incident, Invisalign, and a jaw appliance.

¶8 Bowser described his prior dental and jaw issues and the proposed treatment plans for them. He reported having no jaw issues since his jaw reset itself in 2022. Yet because the jaw unset repeatedly over the last 20 years, he wanted to prevent that from recurring. He testified he is not currently experiencing any dental pain or issues but has several crowns nearing the end of their lifespan.

¶9 At later hearings, the ALJ heard conflicting testimony from Dr. Tipton, Bowser's former treating orthodontist and expert, and Dr. Kootman, the opposing expert. Dr. Tipton testified he treated Bowser from 2005 to 2020 and recommended implants or bridges throughout that time. He did not specifically treat TMD symptoms other than recommending replacing teeth "to give [Bowser] a stable occlusion" because "you don't treat TMD until you have a stable occlusion." When told of Bowser's testimony about his jaw going back into place, Dr. Tipton testified Bowser would still need implants to obtain a stable occlusion and avoid recurring TMD symptoms, explaining "[s]ometimes it's never fully resolved."

¶10 Dr. Tipton testified he had no strong opinion on whether Bowser's dental problems related to the original 2002 industrial injury. He allowed that they "may have been related to the industrial injury, as well as any joint problems he was having." He explained that the jaw issues or TMD Bowser experienced at that time "very likely could have been a result of . . . injury and trauma to the jaws." Dr. Tipton could not opine on

whether Bowser's current dental problems more likely than not related to the industrial injury because he did not have documents describing the original jaw issues, but clarified that "a lot of times TMD symptoms are related to injury." If Bowser's jaw was dislocated during the injury, he opined, then it would be very likely that his TMD symptoms were caused by the industrial injury. He was not aware that Bowser was missing two teeth before the injury.

¶11        Dr. Kootman testified that recent repairs to Bowser's injured teeth were not related to his industrial injury "at all" and that if a piece of the tooth were to break, it would break at the time of injury, not 20 years later. Similarly, he testified that injury to the teeth in 2002 would "definitely not . . . cause [Bowser] to have a crown and a root canal" 20 years later because the decay would appear within six to twelve months, not 20 years. Thus, he concluded that treatments to teeth numbered 2, 14, and 31 were not related to the industrial injury. He also testified that Bowser had good oral hygiene.

¶12        Dr. Kootman testified that when he examined Bowser, Bowser could open and move his jaw well without problems. He questioned whether Bowser really had TMD for 20 years, because he did not see it documented until 2022. He explained that he generally disagrees with the use of Invisalign to obtain stable occlusion and treat jaw issues. He therefore concluded Bowser did not need a retainer or other active medical treatment for his teeth or jaw. He concluded Bowser had reached maximum medical improvement and was stable, so nothing was left to be done related to the industrial injury.

¶13        Dr. Kootman was not provided the original police report that described the injuries and did not have the reports from the jaw specialist or Dr. Tipton. He also testified he was familiar with some of Bowser's providers and did not find them credible.

¶14        The ALJ found Dr. Kootman more credible and adopted his opinions as those most-probably correct and well-founded. The ALJ concluded that Bowser "ha[d] not established by preponderance of the evidence the need for further active medical care as a result of the industrial episode[]" and that treatment for particular teeth and a retainer were "not related to the industrial injury." The ALJ ordered Bowser's ICA file closed and awarded benefits from August 29, 2002 through January 9, 2023.

¶15 Bowser filed a request for review, and the ALJ affirmed the decision. This statutory special action followed. We have jurisdiction. Ariz. Const. art. 6, § 9; A.R.S. §§ 12-120.21(A)(2), 23-951(A).

**DISCUSSION**

¶16 An applicant has the burden to show he is entitled to continued workers' compensation benefits. *Stephens v. Indus. Comm'n*, 114 Ariz. 92, 94 (App. 1977). This Court considers the evidence presented in the light most favorable to upholding the ALJ's decision and must affirm if the decision is "reasonably supported by the evidence." *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105 ¶ 16 (App. 2002). To allow for meaningful appellate review, an ALJ must "make specific findings on all material issues and resolve all material 'conflicts in the evidence, especially when the conflicts involve expert medical testimony.'" *Aguirre v. Indus. Comm'n*, 247 Ariz. 75, 77 ¶ 12 (2019) (quoting *Post v. Indus. Comm'n*, 160 Ariz. 4, 8 (1989)).

¶17 Bowser argues the ALJ's decision is not supported by the evidence. But the record evidence was conflicting about whether Bowser had permanent impairment, whether his injuries were medically stable, and whether he would need future supportive care. Dr. Kootman concluded that Bowser's teeth and jaw reached maximum medical improvement, so he needed no further treatment related to the industrial accident, and that he was not permanently impaired. Dr. Tipton, by contrast, concluded that Bowser would need continued treatment to maintain a stable occlusion and prevent his jaw from dislocating.

¶18 The ALJ explicitly found Dr. Kootman's testimony more credible and probably correct and adopted his conclusions. Dr. Kootman adequately explained that Bowser did not have any current jaw pain or restricted movement, and any tooth fracture or necrosis caused by the injury would have occurred within a year of the injury, so the injury would not have created a need for a crown or root canal 20 years later. He also explained his view that aligners are an overused and ineffective treatment for jaw issues and Bowser could wear them for orthodontic purposes if he wanted, but it would not be needed to stabilize his jaw. While Bowser disagrees with Dr. Kootman's conclusions and the ALJ's finding that Dr. Kootman was more credible, Bowser has not shown these conclusions are not "reasonably supported on any reasonable theory of the evidence." *Perry v. Indus. Comm'n*, 112 Ariz. 397, 398-99 (1975). The ALJ's decision is thus supported by reasonable evidence. *Lovitch*, 202 Ariz. at 105 ¶ 16.

## CONCLUSION

¶**19**       We affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:       JR