NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

BANNER HEALTH, *Petitioner Employer*,

BANNER HEALTH RISK MANAGEMENT, *Petitioner Carrier*,

v.

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent*,

ADRIAN STAUFFER, *Respondent Employee*.

No. 1 CA-IC 13-0057
FILED 06-26-2014

---

Special Action - Industrial Commission
ICA Claim Nos.  20120-870283*, 20130-420167**
Carrier Claim No. 157849*, **

Allen B. Shayo, Administrative Law Judge

**AWARD AFFIRMED**

---

COUNSEL

Jardine, Baker, Hickman & Houston, PLLC, Phoenix
By Stephen C. Baker, John E. Drazkowski
*Counsel for Petitioners Employer and Carrier*

Industrial Commission of Arizona, Phoenix
By Andrew F. Wade
*Counsel for Respondent*

Dennis Kavanaugh, P.C., Mesa
By Dennis P. Kavanaugh
*Co-Counsel for Respondent Employee*

Toby Zimbalist Attorney at Law, Phoenix
By Toby Zimbalist
*Co-Counsel for Respondent Employee*

---

**MEMORANDUM DECISION**

---

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Judge Margaret H. Downie and Judge Donn Kessler joined.

---

**J O N E S**, Judge:

**¶1**        This is a special action review of an Industrial Commission of Arizona (ICA) award and decision upon review for a compensable claim.  One issue is presented on appeal: whether the Administrative Law Judge (ALJ) erred by excusing the respondent employee's (claimant) untimely hearing request. Because we find the evidence of record reasonably supports the ALJ's award, we affirm.

**JURISDICTION AND STANDARD OF REVIEW**

**¶2**        We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(2) (2014),[1] 23-951(A) (2014), and Arizona Rules of Procedure for Special Actions 10.   In reviewing findings and awards of the ICA, we defer to the ALJ's factual findings, but review questions of law de novo.  *Young v. Indus. Comm'n of Ariz.*, 204 Ariz. 267, 270, ¶ 14, 63 P.3d 298, 301 (App. 2003).  We consider the evidence in a light most favorable to upholding the ALJ's award.  *Lovitch v. Indus. Comm'n of Ariz.*, 202 Ariz. 102, 105, ¶ 16, 41 P.3d 640, 643 (App. 2002).

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

**PROCEDURAL AND FACTUAL HISTORY**

**¶3**　　　　The self-insured petitioner employer, Banner Health (Banner), employed claimant as a registered nurse in "Women and Infant Services."　On March 13, 2012, claimant was assisting a morbidly obese patient into bed, when the patient's legs gave way and claimant, "ended up taking her weight." Claimant experienced an immediate onset of "horrible stabbing pain in [the] lower right groin area."　She self-treated and returned to work two days later.　Due to the pain she experienced throughout the day and at her senior manager's direction, claimant filed an incident report with the hospital that same day.　On March 18, 2012, claimant developed rectal bleeding, had increased pain, and went to an urgent care facility.　The urgent care facility sent claimant to the emergency room where she had a CT scan without contrast and a rectal exam performed by a physician assistant.　These procedures led the physician assistant to believe the rectal bleeding may have been caused by "hemorrhoids that had burst" from moving the patient, and urged her to "follow up with a surgeon."

**¶4**　　　　On March 19, 2012, claimant went to Banner Occupational Health where she completed a workers' compensation claim.　Claimant reported her injuries as a hernia and rectal bleeding, with rectal bleeding listed as her primary complaint.　The report from this visit noted "moderate bulging of the right side of abdomen," "an inguinal hernia is present on the right side and is reducible," and diagnosed claimant with an "abdominal wall strain with reducible hernia."　On March 21, 2012, in response to her claim, Nellie Hayes, Banner's workers' compensation claims specialist, wrote to claimant in an "intent-to-deny letter:"

> After careful review of your claim your condition does not fall under Workers' Compensation category. It was caused idiopathically (or from within one's self). The injury was not caused specifically by your job.

As a result, on April 3, 2012, Banner issued a "notice of claim status" (NCS) denying claimant's claim for benefits.　Claimant testified she did not immediately protest the denial because she believed, at that time, she had a hernia and understood the hernia claim was not compensable. Further, she stated she had no new evidence or differential diagnosis with which to protest the denial and, at that time, no doctor had yet told her that her conditions or symptoms were related to the March 13, 2012 work incident.

¶5        Prior to the April 3, 2012 denial, on March 19, 2012, at the behest of the physician assistant at Banner Occupational Health, claimant visited the emergency room a second time. On this trip, a CT scan with contrast was performed, which revealed an ovarian cyst. She was instructed to follow up with a general surgeon and a gynecologist. She first saw general surgeon David Balch, M.D., for her hernia. Dr. Balch told claimant he "did not appreciate a hernia," but told her to see a gastrointestinal specialist for her rectal bleeding, "before we go any further." Claimant then went to Dr. Padda for a colonoscopy, which confirmed she suffered internal bleeding hemorrhoids. She testified the rectal bleeding lasted 2.5 weeks.

¶6        On March 29, 2012, claimant saw gynecologist Frank Fara, M.D., who told her the ovarian cyst was not the cause of her groin pain. He referred claimant to Eric Feldman, M.D., a pain management specialist at The CORE Institute.[2] She saw Dr. Feldman on April 5, 2012, and he performed a lumbar x-ray and ordered a pelvic MRI, which was performed ten days later, "to further evaluate a tear of the proximal hip adductor or distal rectus abdominis muscles". Claimant testified that she was never told the pelvic MRI was intended to check for a possible hip injury, but rather understood the doctors believed her injury was nerve related. The resulting pelvic MRI was "unremarkable," and claimant then returned to Dr. Feldman, who performed an ultrasound guided "nerve block" pelvic injection that failed to provide any pain relief.

¶7        Claimant sought a second opinion from general surgeon Ping Wang, M.D. to determine if she had a hernia. Although Dr. Wang did not believe she had a hernia, he offered to perform exploratory surgery. On May 14, 2012, claimant saw another general surgeon, Conrad Ballecer, M.D., who believed claimant had a hernia and scheduled surgery to repair it. The day before the surgery, which took place on June 22, 2012, claimant received a phone call from his office explaining the surgery was "exploratory, possible hernia repair." No hernia was found during the surgery. Dr. Ballecer called in a gynecologist for the surgery, whom claimant never saw personally, but who recommended claimant follow up with a gynecologist for possible pelvic congestion syndrome. When Dr. Fara was unavailable, claimant saw gynecologist Michael Bryan, M.D. Dr. Bryan recommended claimant either see an interventional radiologist to have her pelvic veins embolized or have a hysterectomy.

---

[2] The Center for Orthopedic Research and Education Institute.

¶8 Upon this recommendation, claimant saw a radiologist, had a venogram, and on August 1, 2012, had some inflamed pelvic veins embolized. Again, she obtained no pain relief. Claimant returned to Dr. Feldman who recommended physical therapy. After performing a full assessment, the physical therapist told claimant he believed she had a labral tear in her right hip and recommended she have a diagnostic MRI arthrogram; acting upon this advice, Claimant did have an MRI anthrogram ordered.

¶9 Claimant then saw Dr. Maddox on September 10, 2012, to obtain the MRI arthrogram results. Dr. Maddox stated there were two possible right hip diagnoses: iliopsoas tendinitis or a labral tear. Dr. Maddox first attempted conservative treatment, which was ultimately unsuccessful. He then operated on claimant's right hip on October 19, 2012, and repaired two labral tears as well as an overstretched ligament/tendon. Dr. Maddox informed claimant that the tears were consistent with her injury resulting from moving the patient. Claimant testified that since Dr. Maddox's surgery, she has improved seventy to eighty percent.

¶10 Claimant also testified that after her initial visit to Dr. Maddox she contacted Banner's workers' compensation department to inquire as to how to reopen her initial claim and was told to file an appeal at the ICA. On September 20, 2012, claimant filed a Petition to Reopen her March 13, 2012 industrial injury claim. The ALJ treated the petition as an untimely hearing request of Banner's April 3, 2012 NCS, which denied her initial claim.[3] In addition, claimant filed a second worker's report of injury for the March 13, 2012 injury date, and reported a right hip injury. Banner denied this second claim, claimant protested, and the ALJ consolidated the two claims for hearing.

¶11 The ALJ held one hearing and heard testimony from claimant and Ms. Hayes. Both parties filed post-hearing memoranda, and the ALJ thereafter entered an award for a compensable claim on the initial claim and denied her second claim as moot. The ALJ resolved all conflicts

---

[3] The legislature has precluded the reopening of denied claims. *Compare Gerhardt v. Indus. Comm'n of Ariz.*, 181 Ariz. 215, 889 P.2d 8 (App. 1994), *with* A.R.S. § 23-1061 (H), *and* 2008 Ariz. Sess. Laws, ch. 169, § 2 (2nd Reg. Sess.).

in the evidence in favor of claimant, specifically found her credible, and concluded:

> Applicant's late filing of the protest of the denial of her claim is hereby excused, pursuant to A.R.S. § 23-947(B)(2) [sic], in that Applicant justifiably relied on the representations of Ms. Hayes, the representative of Defendant Employer, that her claim was being denied pursuant to relevant provisions of Arizona law regarding hernia claims, and that Applicant had no basis to doubt these representations until after the 90 day protest period had elapsed.

Banner timely requested administrative review, and the ALJ summarily affirmed the award. Banner next brought this appeal.

## DISCUSSION

¶12 A hearing request must be filed within ninety days after an NCS is sent. A.R.S. § 23-947(A). In this case, the NCS denying claimant's workers' compensation claim was sent on April 3, 2012, meaning a hearing request had to be filed by July 2, 2012. Claimant's hearing request, however, was not filed until September 20, 2012, after claimant received the results of her MRI arthrogram from Dr. Maddox. In order to prevent her claim from being dismissed for lack of jurisdiction, claimant had to establish one of the statutory "excuses" delineated within A.R.S. § 23-947(B).[4]

¶13 The ALJ found claimant had established justifiable reliance pursuant to A.R.S. § 23-947(B)(1). The statute provides in pertinent part:

> B. As used in this section, "filed" means that the request for a hearing is in the possession of the commission. Failure to file with the commission within the required time by a party means that the determination by the commission, insurance carrier or self-insuring employer is final and res judicata to

---

[4] Both the ICA and this Court are prohibited from excusing untimely hearing requests except for situations specifically enumerated in A.R.S. § 23-947(B). *See Roman v. Ariz. Dept. of Econ. Sec.*, 130 Ariz. 581, 584, 637 P.2d 1084, 1087 (App. 1981).

all parties. The industrial commission or any court shall not excuse a late filing unless any of the following applies:

1. The person to whom the notice is sent does not request a hearing because of justifiable reliance on a representation by the commission, employer or carrier. In this paragraph, "justifiable reliance" means that the person to whom the notice is sent has made reasonably diligent efforts to verify the representation, regardless of whether the representation is made pursuant to statutory or other authority.

¶14 Banner argues the ALJ erred by finding claimant justifiably relied upon Ms. Hayes' representations that her claim was not compensable when she failed to timely protest the April 3, 2012 NCS. First, it asserts that, at a minimum, claimant was aware the injury had caused her to have bleeding hemorrhoids before the denial became final. Second, it argues there were references in the medical records that alluded to a potential hip injury prior to July 2, 2013.

¶15 With regard to the hemorrhoids, claimant testified the rectal bleeding resolved quickly, continuing for approximately 2.5 weeks following the March 13, 2012 injury, meaning it had resolved prior to Banner issuing the April 3, 2012 NCS. Moreover, except for the colonoscopy, there is no indication any treatment was required for the hemorrhoids or that the hemorrhoids were the cause of claimant's pain.

¶16 With regard to the single reference in the April 5, 2012 CORE medical record of a "possible" hip condition, claimant testified that no medical provider mentioned a hip injury to her before she began physical therapy at Apex in August 2012, which was well after her time to file a request had lapsed. Further, she stated she had no reason to obtain her medical records during the extensive investigation and work up of her symptoms until Banner refused her second claim for benefits after Dr. Maddox's diagnosis.

¶17 Claimant continued to seek medical advice and treatment toward the resolution of her ongoing pain for five months after Banner's April 3, 2012 denial of her initial claim in an attempt to verify its original assumption claimant had sustained a non-compensable hernia. Although the possibility she had suffered a hernia was ruled out ten days before the April 3, 2012 NCS became final, no doctor was able to identify the source of her pain or attribute it to her work until after the time for filing a timely hearing request had lapsed.

**¶18**       Under the unique factual circumstances found here, and our deference to the ALJ's factual findings, we find claimant's ongoing efforts to obtain a medical diagnosis of her industrial-related condition satisfied the statutorily mandated "reasonably diligent efforts to verify" Banner's representation that her injury was non-compensable. *See Janis v. Indus. Comm'n of Ariz.*, 111 Ariz. 362, 363, 529 P.2d 1179, 1180 (1974) ("The test is that if a claimant appears to have a meritorious position and the facts do not establish an excessive delay and the delay, itself, does not in some way prejudice the insurance carrier, the interest of justice require that the untimeliness of the filing be waived.").

**CONCLUSION**

**¶19**       Accordingly, we affirm the ALJ's Award.



Ruth A. Willingham · Clerk of the Court
FILED: gsh